Thompson *v.* Multnomah County.

---

J. THOMPSON ET AL., Plaintiffs in Error, *v.* MULTNOMAH COUNTY, Defendant in Error.

### *Error to Multnomah County.*

1. The Circuit Court having supervisory control of all inferior tribunals, in the absence of a specific law, a reasonable time will be allowed to bring up their proceedings by certiorari.
2. Certiorari lies to the county court to bring up and review its proceedings in laying out a public highway.
3. Certiorari lies only to review judicial and not ministerial acts.
4. In the proceedings of all inferior tribunals, every jurisdictional fact must appear affirmatively upon the face of the record.
5. In applications to the county court for laying out highways, the petition of twelve householders, and the public notice required by law, are jurisdictional facts.
6. An inferior tribunal having once acquired jurisdiction, the same intendment of regularity will be made as for the proceedings of superior courts.
7. A person who signs a petition for a highway is not a "disinterested" householder in the meaning of the "act," and therefore incompetent to act as a reviewer.

THE statement of the case is sufficiently made in the opinion of the Court.

Thompson *v.* Multnomah County.

*Geo. H. Cartter, Esq.,* counsel for plaintiffs in error.

*D. Logan, Esq.,* counsel for defendant in error.

STRATTON, J.   This cause was argued at the July Term, 1861, of this Court, and the Court expressing an opinion which in effect decided the matter in controversy, but which was not touched by the counsel for the plaintiff in error, an application was made for a further hearing.   The motion was allowed and the cause continued.   At this term the matter was again more fully considered upon the written argument of the plaintiffs' counsel.   From the record, it appears that James Johns, and others, at the April Term of the County Court of Multnomah County, petitioned for the laying out and opening a road on the east bank of the Wilamette river, between certain points in said county, specified in the petition. A view of the routes was ordered, which was returned favorable to the proposed road.   At a subsequent term a strong remonstrance and protest was presented to the Court, upon which the Court appointed three persons to review the road and assess the damage.   Their report was against the claim of some of the remonstrators for damages, and at the December Term of the Court, 1860, the county surveyor was ordered to survey and mark out the road, preparatory to opening the same.

The counsel of some of the defendants now gave notice of an appeal, but this appeal was never prosecuted.   In March, 1861, the plaintiffs in error sued out a writ of certiorari from the circuit court to bring up the record and proceedings of the board of county commissioners for that county, and, upon hearing, the case was dismissed on the motion of the district attorney, appearing in behalf of the county; to which motion the plaintiffs in error excepted, and brings his exceptions here for review.   The motion assigned as a reason that the writ was not brought within twenty days, the time allowed for such writ to issue to a justice of the peace, and this was the

reason as we understand for the dismissal. The questions raised in the argument are quite numerous, and some of them important as matters of practice.

First. As to the time in which the writ should be sued out. Under the Act of eighteen hundred and fifty-four, Statutes of 1855, p. 290, defining the duties and powers of justices of the peace, it was provided, that a party to a proceeding before such officers feeling aggrieved by any process, proceeding, judgment, etc., might remove the same into the district court within twenty days, as therein provided, and it is said that by analogy the writ issued within the same time to remove any record from the county court. This act was specific, and applied only to parties and proceedings before justices of the peace, and the reason for extending it to other courts, by implication, is not very apparent. If it be a remedial writ, by which a superior court is enabled to bring up and revise the proceedings of all inferior tribunals, it would be easy to imagine many cases in which it would utterly fail to accomplish the end of the law, if it could not be brought after twenty days.

On examining the authorities upon common law proceedings, it does not seem by the practice of the courts that any particular time has ever been fixed in which the writ must issue.

The case in 25 Wend., 293, cited by counsel for defendant in error, is not an authority in his favor. Nelson, C. J., in delivering the opinion of the court, said, " I place my refusal to allow the certiorari upon the unreasonable delay in the application for it. Even writs of error cannot be issued after two years from the rendition of the judgment, and in analogy to this statute we should refuse a certiorari after the lapse of this period, in ordinary; much more ought we to refuse it in a case like the present."

In the case of the people ex rel., Agnew v. the Mayor of New York, 2 Hill, 9; Bronson, J., remarked : " The time for bringing an error from a final judgment is limited by law to

two years, and I think a case can rarely happen where it would be proper to allow a certiorari after the lapse of a longer time." In both these cases the application was made when more than two years had elapsed. Though this writ differs from a writ of error, we are inclined to the opinion that it should be allowed in all meritorious cases brought up within two years, the time limited by the statutes of this State for bringing writs of error. That disposes of the only point made in the court below; but the whole case being upon the record, it becomes necessary to consider and pass upon other questions which that record presents—*First.* It is said that certiorari does not lie to review acts of the County Courts or commissioners in laying out roads. *Second.* That a certiorari does not lie to review a naked ministerial act, nor the act of a ministerial officer, but only judicial acts. These questions may be considered together. The prime difficulty seems to be the distinguishing between acts which are judicial and those which are clearly ministerial or executive. There is certainly great uncertainty, and many conflicting opinions in the books upon this point. It may be approximately true to say that a jurisdiction clothed with discretionary power to deal with the person, property or interest of third persons, or to change the relation of such property or interest, is a judicial act. In *Rice et al.* v. *Parkman*, 16 *Mass.*, 326, the question arose whether an act of the legislature was judicial in its nature, and therefore in conflict with the Constitution. The court remarked: "That it did not seem to be of this description of power," for it was not a case of controversy between party and party, nor was there any decree or judgment affecting the title to the property. So in *Regina* v. *Overseers of Salvord*, 14 *E. L., and E. R.*, 145, which was a certiorari to a board of inland revenue that had issued a license for the sale of beer. Coleridge, J., remarked: "The cases cited are manifestly distinguishable. The county rate is made by the Court of Quarter Sessions, assembled and acting as a court, and exercising its judgment

as to the necessary amount, and other matters. So the church building commissioners, although not acting as a judicial body, were invested with judicial powers in the matters in question; they hold an inquiry and hear objections, and their order stopping a foot-path through a church yard is clearly judicial, like the order of justices for stopping foot-paths, and were more so, because, in the former case, there is no appeal."

Though not very full, there is sufficient expressed in these decisions to give a pretty clear notion of what these courts considered a judicial proceeding.

It is not controverted that both English and American courts recognize the boundary of judicial proceedings as the limit of inquiry to which a certiorari will reach, though very many modern cases have gone much further, and innovated upon a rule well understood before judicial functions were cast upon an almost infinite number of corporate bodies and associations of men. Admitting this to be the true distinction, the question recurs, are the proceedings of a Board of County Commissioners, under the statute of this State, to lay out, open or vacate public roads, ministerial or judicial proceedings? We are clearly of the opinion that they belong to the latter class, and are examinable in the Circuit Courts in this form of proceeding. There is, in Massachusetts, an uninterrupted series of decisions affirming this power of the Superior Courts of law over the Boards of County Commissioners in laying out highways. The jurisdiction, as far as the reports of the court indicate, has never been questioned. Nor has the distinction between acts ministerial and judicial been lost sight of, or disregarded, as a number of writs have been dismissed on the express ground that the proceeding brought up was not judicial. (2 *Mass.*, 249; 11 *Mass.*, 158; 13 *Pick.*, 195; 8 *Pick.*, 440.) The same practice has prevailed in Pennsylvania, Vermont and Ohio.

In New York the general doctrine has been fully recognized, but there has been considerable fluctuation in the

application of the rule to particular cases, but we find no one that directly sustains the proposition that a certiorari does not lie to a Board of County Commissioners in laying out a highway. The case in 1 *Hill*, 647, is very brief. The four or five points decided are summed up in about ten lines and no' reasons are assigned; but it appears that the record disclosed no error in law upon which the court could act, and in dismissing the writ was clearly right.

But it is said that where there is an appeal given by statute a writ of certiorari ought not to be allowed. To this it may be answered: There is no appeal given from any proceeding of the Board of County Commissioners in laying out roads, except in the single question of the assessment of damages; but no damages could be assessed unless the person damaged made application for the assessment before the second day of the next term succeeding the locating of the road, and he could not make such application unless he had notice of the proceedings. Now it might happen, as in the present case, that no legal notice was ever given; and it must be presumed that there was no notice unless it appears upon the face of the record.

This would be a very strong additional reason why this writ should go in cases like the present.

One of the most common and important offices, performed by this writ at common law, was to enable the Superior Courts to supervise the proceedings of inferior tribunals and see that they did not exceed their jurisdiction or proceed wholly without authority.

Section nine of article seven of the Constitution of this State provides that "All judicial power, authority and jurisdiction, not vested by this Constitution, or by laws consistent therewith, exclusively in some other court, shall belong to the Circuit Courts; and they shall have appellate jurisdiction, and supervisory control over the County Courts and all other inferior courts, officers and tribunals." It may be said that

this section simply affirms the common law, but as the funda-
mental law of this State, governing the legislature as well as
the court, and looking to the peculiar phraseology of the last
clause, it may be matter of grave doubt whether the legisla-
ture could so far abridge the power of the Circuit Courts as
to confine them to examination of cases brought upon an
appeal only. In support of this view it has been held where,
by the act creating an inferior tribunal, its adjudications were
declared to be final, nevertheless a writ of certiorari would
lie. (*Ex parte, Mayor of Albany,* 22 *Wend.,* 287.)

The last question to be considered brings the inquiry, does
the record show facts sufficiently regular to confer jurisdic-
tion upon the County Court and warrant its proceedings?
and if so, was the subsequent action of the court sufficiently
regular to support the judgment? It is admitted that the
County Court, or Board of County Commissioners, so far as
it exercises judicial power, is a court of special and limited
jurisdiction. The facts, therefore, necessary to confer juris-
diction, must appear upon the face of the record. If they do
not so appear, nor were proved *aliunde,* the proceedings were
null and void.

By third section of the act relating to roads and highways
(*Session Laws* 1859, *p.* 11), it is provided that "when any
petition shall be presented for the action of said board for the
laying out, alteration or vacation of any county road, it shall be
accompanied by satisfactory proof that the notice has been
given by advertisement posted up at the place of holding the
Commissioners' Court, and also in three public places in the
vicinity of the said road or proposed road, thirty days pre-
vious to the presentation of said petition to the said board,
notifying all persons," &c.

The first clause of section four of the same act further pro-
vides, that, "Upon the presentation of such petition (signed
by twelve householders), and proof that the notice has been
given, as provided in the last section, the Board of Commis-

sioners shall appoint three *disinterested* householders of the county," &c.

Before the court could take a step or acquire any authority, two things must plainly have been done: *First.* A petition of twelve householders; *Second. Notice,* as provided above. Without these facts the court was no more than a stranger to every person or interest involved in the proceeding, and until the jurisdiction was acquired, no intendment of regularity or power operates in its favor. It nowhere appears in the record, by way of allegation or recital, that any such notice was given, either at the court house door or in the vicinity of the road. The omission was fatal to the proceedings of the Board of County Commissioners, as clearly showing that no jurisdiction was at any time gained over the subject matter to be adjudicated upon.

The fourth section, above quoted, also provides, that, upon the presentation of the petition and proof of the notice, &c., that the board shall appoint three *disinterested* householders to view the said road and report upon the same. By inspect-ing the record, it seems that the court appointed three of the *petitioners* such viewers. This was clearly irregular, as the petitioners for the road could in no sense be said to be disinterested, and therefore competent under the act. For this, also, the cause should be reversed, for an error apparent upon the face of the record, after the court might have acquired jurisdiction. This error appears affirmatively, and stands on a different footing from other objections urged at the bar, which it is proper to refer to. It is objected that the record does not show that the reviewers, or surveyor, were sworn before entering upon their duties, or that the report of said viewers was publicly read on two different days, as the law required. The answer to these objections is that it was not necessary that these facts should appear. It is settled law as to inferior tribunals, that once having acquired jurisdiction, and that appearing, every intendment will be made in favor of the

Thompson *v.* Multnomah County.

proceedings of superior courts, or courts of general jurisdiction. (1 *Sm. Lead. Cas.*, 817), and cases there cited.

Judgment reversed.

NOTE.—The writ of certiorari is now unknown to the practice in Oregon. Title 1 of Chap. VII of the Code, substitutes, in its stead, the "writ of review," and defines its limitation both in time and efficiency.

Sec. 875, p. 367 of the Code specially applies the writ of review to matters of county business. (Rep. 1867.)