Submitted on briefs January 13, reversed and case dismissed
February 10, petitions for rehearing denied April 7, 1954

HUGGETT ET UX. *v.* MORAN ET UX.
266 P. 2d 692

*Leo Levenson,* of Portland, and *Schwenn & Brink,* of Hillsboro, for appellants.

*Harry V. Benson, Benson & Benson,* and *Thomas H. Ryan,* of Portland, for respondents.

PERRY, J.

This suit was commenced by the plaintiffs to rescind a contract for the purchase of real property from the defendants William G. Moran and Ethel F. Moran, husband and wife. The defendant, Ethel F. Moran, being deceased, the cause was continued against the defendant, William G. Moran, who was the sole owner of the property. The plaintiffs alleged as their grounds for a rescission that the defendant, himself or through his agents, represented that the roadway leading from what has been called the ''Rocky Point'' county road to the property purchased by the plaintiffs was a county road, that the statement was material and false, and that they would not have purchased the property except for their reliance upon the false representations of the defendant.

The defendant by answer alleged that the roadway was not a private roadway, but that it was a public road maintained by Washington county and used by the general public without restrictions for a period of over forty years. Defendant also admitted that the roadway was not a county road, and denied that he ever represented it to be a county road.

The plaintiffs replied, denying the allegations of new matter contained in the defendant's answer.

The trial court found that the representation that the way was a county road was made by the defendant to the plaintiffs; that in fact it was not such a road; that the representation was material; and granted the plaintiffs' prayer for a rescission. From this ruling the defendant appeals.

The defendant's principal contention is that the uncontradicted evidence shows that the road in question was used and traveled by the public as a county road and was improved and worked upon and maintained by the county since the year 1938, and that for all legal purposes the roadway has become a county road by prescription, and, therefore, the representation, if made, was not false.

The principal question, therefore, before this court is whether or not the evidence disclosed that for the purposes of this cause there was a county road leading from the "Rocky Point" county road to the farm purchased by the plaintiffs.

In this state there are two systems of highways, those designated as state highways, and those designated as county roads.

State highways were first so designated by the legislative assembly of the state by Chapter 237, Oregon Laws, 1917.

In *Postal Telegraph Co. v. State Highway Commission*, 276 F 958, 961, it is stated:

"* * * Prior to the authorization for the construction of this class of highways, there were no such roads in the state. Whatever roads existed were known as county roads, except that, earlier in the history of the country, there were certain

highways known as toll roads, and certain others known as territorial roads. By statute, however, all territorial roads were declared to be county roads. Section 38, tit. 1, c. 47, General Laws of Oregon 1845-1864. By the same title (section 1) it was declared that all county roads shall be under the supervision of the county court of the county wherein the road is located, and that none such shall be altered or vacated except by authority of such court of the proper county."

Oregon Laws, 1845-1864, § 1, title I, ch 47, provided as follows:

"That all county roads shall be under the supervision of the county court of the county wherein the said road is located, and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in this state, except by the authority of the county court of the proper county."

This same section was later revised as § 100-1202, OCLA (ORS 368.205), and insofar as is material to this issue reads as follows:

"All county roads shall be under the supervision of the county court wherein said road is located. Each county court within this state shall have the authority, and it shall be its duty, to supervise, control and direct the laying out, opening, establishment, locating, relocating, changing, alteration, straightening, working, grading, maintenance and keeping in repair, improvement and vacation of all county roads within its county, and to prescribe the methods and manner of working, improving and repairing the same, and to legalize old roads and to restore monuments thereon; and, except as shall be expressly provided, no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in the state, except by authority of the county court of the proper county."

Section 100-1203, OCLA (ORS 368.405), provides for the establishment of county roads in the following manner:

"(1) By petition of freeholders.

"(2) Be [By] resolution of the county court.

"(3) By grant of owners of necessary rights of way.

"(4) By condemnation proceedings."

and then provides:

"This provision shall not preclude the acquirement of public ways by adverse user."

So that there has been expressly provided by statute the right of counties to obtain public roads by prescription.

██ While strictly speaking "way" is not synonymous with "road" (the word "way" being more generic than the word "road", and referring to many things besides roads, *Kister v. Reeser,* 98 Pa 1, 4, 42 Am Rep 608), as used in a statute authorizing the establishment of county roads it must be construed as including therein county roads. This statute does not in anywise change what we have said in the past regarding the ultimate fact that "In this state a highway may be established by adverse user, and, 'where the length of time of such use by the public has been greater than the period prescribed by the statute of limitations for the recovery of real property, that will be regarded as sufficient evidence of the existence of a highway independently of any supposed dedication': *Douglas County Road Co. v. Abraham,* 5 Or 318. To the same effect is *Bayard v. Standard Oil Co.,* 38 Or 438 (63 Pac. 614)." *Ridings v. Marion County,* 50 Or 30, 33, 91 P 22. And generally it is unimportant whether the right arising by prescrip-

tion is based on the presumption of an antecedent regular and lawful exercise of established authority or by prior dedication, the result is the same. 39 CJS 922, Highways, § 3.

■ With relation to prior dedication of roadways, the rule is that, regardless of the easement of use acquired by the public, property owners for their own benefit, or convenience, cannot impose a street or highway upon a municipality against its will and compel it to improve or repair the street or highway. *Moore v. Fowler,* 58 Or 292, 114 P 472.

■ By enactment of a law a county cannot be compelled by formal dedication or gift to accept a highway and thus be impressed with the burden of improvement and repair without the formal sanction of the county court. § 100-1225, OCLA, as amended, (ORS 368.550); and as to the conveyances by individuals of rights of way see § 100-1224, OCLA (ORS 368.545). However, if the roadway is duly accepted by the county, the duty to establish and maintain the way then arises.

Each of the above methods of establishing a county road with its attendant liability requires formality of offer and formality of acceptance, and refers solely to the statutory methods of "laying out, opening, establishment, alteration, straightening, locating and relocating of county roads". § 100-1203, OCLA (ORS 368.405).

■ The rights to the use of a way arising by prescription, arise not out of the formality of conveyance, but by informality; not by formal gift, grant or dedication, but by open, notorious, hostile, adverse use, based upon the assumption of a prior dedication or action by duly constituted authority. Thus a roadway so established is not controlled by the statutory require-

ment of formal acceptance, and unless required by statute, no formality is necessary to a valid acceptance. *Hendrickson v. City of Astoria,* 127 Or 1, 270 P. 924; *Christian v. Eugene,* 49 Or 170, 89 P 419; *Carter v. City of Portland,* 4 Or 339.

■ An offer of dedication may be impliedly accepted by some act or acts showing that the municipality has assumed control and possession of the land dedicated as a public way, but the acts relied on must be unequivocal and not equivocal or isolated. *Hendrickson v. City of Astoria,* supra, p. 8; 18 CJ 82, Dedication, § 80; 26 CJS 104, Dedication, § 40a.

■ Whenever a statute prescribes the minimum width of public roads to be established in the future, and a public road is established by prescription, the width thereof is the minimum necessary to the establishment of a legal road in the absence of evidence of the taking of a greater amount. *Pillsbury v. Brown,* 82 Me 450, 19 A 858, 9 LRA 94; *Kritzberger v. Traill County,* 62 ND 208, 242 NW 913; *City of Seattle v. Abrahamson,* 109 Wash 116, 186 P 644; 25 Am Jur 360, Highways, § 36; 39 CJS 939, Highways, § 20.

With these rules of law before us we shall now consider whether or not the evidence is sufficient to establish a county road by prescription for the purposes of the instant case.

Mr. Carl R. Tannock, called as a witness by the defendant, testified that the road in question had been open for use by the general public since about 1916, and that it has never been shut off or closed since that time; that the county did work thereon in the year 1938, and the road has been maintained by the county since that date.

Mr. Clarence D. Nelson, called as a witness by the defendant, testified that he had lived in the vicinity

nearly 60 years; that he thought the road had been open for public use since "about 1910 or '11''; that the road has been open to the use of the public and not restricted since that date.

Mrs. Nellie R. Grant, called as a witness by the defendant, testified that to her knowledge the road had been open since 1918 to the use of the public and had never been closed.

Mr. L. L. McIntyre, called as a witness by the plaintiffs, testified that he was employed by Washington county as a county engineer and road master and had charge of the maintenance and construction of county roads. He testified relative to the road in question as follows:

"Q Is it maintained by Washington County?

"A Washington County has done some work on that road.

"* * * * *

"Q Mr. McIntyre, were you County Engineer in about 1938?

"A I was.

"Q Was there some work done on this roadway into the Moran place at that time by Washington County?

"A There was [.]

"Q How extensive was the work done by Washington County in about 1938?

"A Matter of two days with a bulldozer pushing stumps out to one side that had been there that had to be changed to slightly increase the width of the roadway and, some gravel was placed upon the road at points to improve the surface.

"Q In that road you did in 1938, did you start at the point where the roadway leaves Rocky Point Road and go down to the Moran place?

"A We did.

"Q You did that regardless of whether the road was in Washington County or Multnomah County?

"A That's right.

"Q Has that roadway been maintained by Washington County from 1938 until recently?

"A In a way it has been maintained. It hasn't been maintained up to the start—up to the standard in which we maintain a regular county road.

"Q But the road has had some maintenance up until the time Mr. Huggett took over the place?

"A Probably a maximum of ten loads of gravel. and a grader goes down and out at times it is convenient such as late fall or early spring.

"Q Is it fair to say that this roadway was improved and maintained by Washington County to forestall an alternative route that was planned into that area?

"A It was.

"Q You maintained this road because it was less expensive for the county to take this alternative?

"A It was in the charge of the people concerned at that time and in their judgment, on a condemnation, to get the people in and out on that route rather than construck [sic] another route and it would be expensive to construck [sic] and, also, was impossible for people to get out on most of the time.

"Q Was there a project under way to attempt to force the county to offer a different roadway?

"A There had been surveys made in that territory to consider a route which would sever [sic] the place.

"Q Now, do you know whether or not your road foreman up in that area has had that road run over with a blade to help maintain it?

"A Yes, he has.

"Q You, also, had the foreman up there furnish gravel for the road?

"A That's right.

"Q How long has that maintenance continued up until the present time?

"A Since the time of that construction.

"Q Until this time?

"A Until this time.

"* * * * *

"Q Is it a fact that you have had a man by the name of Art Shepherd, a grader, working in that area for ten years or so and he maintained that roadway during his ten years up there?

"A He did.

"Q Is it also a fact you had a Mr. Rex up there from 1938, who maintained that roadway up until the time of his retirement?

"A He did.

"Q Has that roadway, to your knowledge, ever been closed to the general public?

"A No.

"Q Can you tell the Court about how long that road has been in use by the general public?

"A My acquaintance with the road only began at the time when that work began upon it..

"Q In 1938?

"A That's right.

"* * * * *

"Q Mr. M Intyre, [sic] isn't it a fact that, entirely aside from that school bus, there was this projected new roadway to be built in there and there had been some expensive surveys made and you took the position that rather than build the new roadway, that it would be more economical to fix up this old roadway and provide the people with a route in there?

"A That is the basic reasoning.

"Q That is entirely aside from the fact this man had a school bus?

"A That is true."

Mr. Herman H. Rease, called as a witness by the defendant, testified that he had been formerly employed by the Washington county road department as foreman from June, 1943, to October, 1950. Relative to the road in question he testified as follows:

"Q Now, Mr. Rease, you are acquainted with that road that leaves Rocky Point and goes down to the Moran Place?

"A Yes, sir.

"Q During the time that you were foreman, do you know whether or not the county maintained that road into Moran's place?

"A Yes, sir; they did.

"   *   *   *   *   *

"Q Could you tell us roughly, during the period of time you were foreman, how many times did the county haul rock in there?

"A It would be roughly. I would say we hauled forty or fifty loads—four yard loads.

"   *   *   *   *   *

"Q How many times a year would you say that the county customarily ran that maintainer over that road while you were foreman?

"A To the best of my recollection, the very last time the blade would be up on the Dixie Mountain Roads, I would catch all those side roads and roads such as that for the final time. And he might have went up in the fall. I wouldn't be positive of that. Very seldom he would go in the winter because it wouldn't work out very well.

"Q Now, Mr. Rease, the county in the maintenance of that road, did they maintain that road the full length to where it left the Rocky Point Road down to his gate, the full length of that road?

"A Yes."

■■ It is quite clear from the evidence set forth above (which is uncontradicted) that in 1938 the county

took over a private way, that had been previously established, to avoid building another and more expensive county road to serve this area, and that the county for a period of more than 10 years had expended thereon public funds for the maintenance thereof. That for the purposes of this case in contemplation of law a county road was in fact established.

We are not unmindful that it appears from the evidence that a very small portion of this road is in Multnomah County. However, a presumption arises that Washington County maintained the same by agreement with Multnomah County and there is no evidence to the contrary.

The evidence in this case discloses that a county road in fact existed, and this case must be reversed with instructions to dismiss the plaintiffs' complaint.