Argued November 3, 1978, affirmed April 3, 1979

NYMAN, *Respondent,*
*v.*
CITY OF EUGENE, *Petitioner.*
(No. 76-4147, CA 7743, SC 25808)
593 P2d 515

[48-a]

Stanton F. Long and John B. Arnold, Eugene, argued the cause for petitioner. With them on the briefs were Johnson, Harrang & Mercer, Eugene.

Terence J. Hammons, of Hammons, Phillips & Jensen, Eugene, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, and Linde, Justices.

HOWELL, J.

## HOWELL, J.

The primary issue here is the effect to be given to a recitation in a county court record that certain property owners agreed to the widening of a county road. The Court of Appeals, sitting in banc, held that the recitation was insufficient to confer jursidiction on the county court "without an affirmative showing in the record that all of such owners signed the agreement." 32 Or App 307, 315, 574 P2d 332 (1978). We granted review, 283 Or 235 (1978).[1]

The parties submitted this controversy without suit or action pursuant to ORS chapter 27.[2] The facts were stipulated as follows.

---

[1] When we granted review, we requested argument on the following questions:

Did the 1952 Lane County Court have jurisdiction to enter its order widening the county road?

What are the jurisdictional requirements which had to be met before the order could be entered?

Do the necessary facts appear on the face of the record to prove that these jurisdictional requirements were satisfied?

In particular, is the recital in the record that the road widening was "all as agreed to by the property owners abutting on said road" sufficient or must the record show affirmatively that all of such property owners agreed to the road widening?

[2] ORS ch 27 provides:

"27.010. Parties to a question in controversy, which might be the subject of an action or suit in a court of record with such parties plaintiffs and defendants, may submit the question to the determination of such court without action or suit, as provided in ORS 27.020 and 27.030."

"27.020. The parties as plaintiff and defendant shall state, in writing, a case containing the facts upon which the controversy depends, and subscribe the same in person or by their attorneys. Such statement shall be verified by the oaths of the parties, or where there is more than one plaintiff or defendant, by at lease one of each, to the effect that the controversy is real, and the proceeding is taken in good faith to determine the rights of the parties. Where either party to the controversy is the state, a county, or other public corporation therein, or a private corporation, or minor, the statement of the case may be subscribed and verified by any person who at the time sustains the relation to such state, county, corporation or minor, as would authorize the service of a summons upon him."

Plaintiff is the owner of real property adjacent to a road in the city of Eugene known as Barger Drive. Barger Drive was originally established as a county road in 1895 by Lane County with a right-of-way 40 feet wide. The public has used the roadway at all times since.

On or about January 31, 1951, the Lane County Court adopted Resolution 2178 declaring its intention to widen Barger Drive to 50 feet. The resolution stated that the widening was "[a]ll as agreed to by the property owners abutting on said road." However, the parties to the present proceeding have failed to find any record that plaintiff's predecessor in interest agreed to the widening. The parties located County Road File 2178 as it now exists and found in that file an agreement to the widening of the road, consisting of three unnumbered pages which were executed in February, 1950. The agreement contains the signatures of certain owners of property abutting Barger Drive at that time, but the signature of plaintiff's predecessor in interest does not appear on any of the pages.

Pursuant to Resolution 2178, notice of the widening was posted and a return of that notice was made on or about February 5, 1951. On April 2, 1952, the county court decided to establish a 50-foot right-of-way and made an entry in the county journal to that effect.[3]

---

"27.030. The statement shall be filed with the clerk, and from the date of filing the court shall have jurisdiction of the controversy as if it was an action pending after a special verdict found, and shall proceed to hear and determine the controversy accordingly."

[3] No formal order widening the road appears in the record in this proceeding. The only evidence of the order is the journal entry, which provides as follows:

"# 2178

"In the Matter of the Resolution of          ORDER
   the County Court for widening of a    ESTABLISHED
   County Road

"Now at this time this matter came on regularly to be heard and is hereby ordered established as a 50-foot right-of-way."

In the fall of 1952, Lane County blacktopped Barger Drive. The blacktop was within the boundaries of the original 40-foot right-of-way, but the county moved then existing fences to a line 25 feet from and parallel to the center line of the right-of-way. The fences ran approximately one-quarter mile along Barger Drive but did not traverse the property of plaintiff's predecessor. Lane County maintained the roadway until 1966, when the City of Eugene assumed jurisdiction.

On April 14, 1975, the City adopted an ordinance providing for the improvement of Barger Drive, including the widening of the roadway. In September, 1975, the City commenced construction of the Barger Drive improvements on that portion of the right-of-way that Lane County sought to acquire in 1952. That portion includes a strip of the property owned by plaintiff.

Plaintiff contends that no actions of Lane County or the City of Eugene have operated to widen the right-of-way and that she is entitled to compensation for the taking of the strip on her property. The City contends that plaintiff's rights are subject to a right-of-way in the public because: (1) the 1952 Lane County order lawfully extended the right-of-way to include the strip on plaintiff's property; (2) plaintiff cannot now collaterally attack the 1952 resolution because her predecessor in interest failed to seek a writ of review and because of passage of time; and (3) plaintiff's rights to the disputed property are barred by the doctrine of adverse user.

## I. Validity of the 1952 Order

Plaintiff contends that the 1952 order is invalid because the resolution on which it was based contained no statement of public necessity or, alternatively, because the signature of her predecessor in interest does not appear on any of the documents found in the public records. The trial court agreed with plaintiff's first contention, concluding that the statement of

public necessity is "jurisdictional" and that the failure to include such a statement rendered the 1952 order "void." The Court of Appeals rejected plaintiff's first contention. However, it agreed with her alternative position, concluding that in order for the county court to acquire "jurisdiction" to widen a road by agreement, the signatures of all affected property owners had to appear in the record.

It is important to observe at the outset that the characterization of a statutory mandate as "jurisdictional" simply states a conclusion. In the context of a case such as this, it means that this court has concluded that failure to comply with the statutory requirement renders the government action void as to this particular party. The characterization is, therefore, the ending point in our analysis, not the starting point. In a number of cases, however, this court has characterized statutory requirements as "jurisdictional" with little or no analysis. Thus, in various challenges to the establishment or alteration of roads, we have held that the county court acted without "jurisdiction" when it relied on an earlier non-final order by the same court, *Columbo et al v. Hewitt et al,* 221 Or 121, 350 P2d 893 (1960); when no statement of public necessity appeared in the authorizing resolution, *Latourette v. County Court,* 121 Or 323, 255 P 330 (1927); when an affidavit disclosed that notice was not posted according to statutory requirements, *Lauderback et al v. Multnomah County,* 111 Or 681, 226 P 697 (1924); when a recitation in the record did not disclose the manner in which notice had been posted, *State of Oregon v. Officer,* 4 Or 180 (1871); when the petition to establish the road did not describe the road's terminal points, *Johns v. Marion County,* 4 Or 46 (1870); and when there was no recital in the record that notice had been given to affected landowners, *Thompson v. Multnomah County,* 2 Or 34 (1861). At the same time, we have dismissed challenges on the ground that the alleged defects were not "jurisdictional," holding that once "jurisdiction" is established, the

[52]

county court proceedings are "presumed" regular. *See Morton v. Hood River,* 88 Or 144, 171 P 584 (1918); *French Glenn Co. v. Harney County,* 36 Or 138, 58 P 35 (1899).

It is difficult, if not impossible, to determine from these cases why certain statutory requirements are considered "jurisdictional" and others not. Our decisions also seem to apply the concept of jurisdiction indiscriminately without distinguishing "legislative" or policy-making functions from "quasi-judicial" or fact-determining functions. *Cf., Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973). We are now of the opinion that clear analysis in this area requires that we establish criteria for determining what statutory requirements are indispensable to the validity of the challenged action. We are also of the opinion that our analysis will be facilitated if we abandon the use of the label "jurisdiction" in cases such as this and focus instead on the specific statutory language that permits the government to affect the rights and obligations of its citizens.

ORS 368.405[4] provides that proceedings for the establishment and alteration of public roads may be instituted by petition of freeholders, by resolution of the county court, by grant of owners of necessary rights of way, or by condemnation proceedings. The mechanics of establishing a road by petition are described in ORS 368.430-.465, and the mechanics of establishing a road by resolution are described in ORS 368.470. Because ORS 368.470 requires that the county court, when establishing a road by resolution, give notice "as provided for upon the filing of a petition for such purposes" and that it follow "like proceedings * * * as in the case of the filing of a petition," the procedures are basically the same whether the court acts under a petition or a resolution.

---

[4] Citation is to the current statutes for purposes of convenience. The statutes in effect at the time of the 1952 order did not materially differ from the current statutes.

■ ORS 368.470(7) also allows the county to "procure right of way" by "agreement." Subsection (7) was apparently designed to permit the county to dispense with some of the formalities described below when all the affected property owners agree to the action. However, the subsection must be read to mean that absent agreement of all the property owners affected, the same proceedings must be followed as in the case of the filing of a petition.

ORS 368.445(1) provides that when the petition authorized by ORS 368.430 is presented to the court:

" * * * [I]t shall be accompanied by satisfactory proof by affidavit that:

"(a) Notice has been posted at the place of holding county court and at three public places in the vicinity of the proposed road to be located, laid out, relocated or changed, 30 days previous to the presentation of the petition, notifying all persons concerned that the application will be made to the court at its next term.

"(b) Notice has been forwarded by mail, postage prepaid, not less than 30 days prior to the date of presentation of the petition, to each record owner of land, on or over which the proposed road or portion thereof is to be laid out, relocated or changed, at the last-known post-office address of the owner."

ORS 368.445(2) provides:

"If the address of the owner is unknown to the person mailing the notice mentioned in paragraph (b) of subsection (1) of this section, it may be mailed to the address given on the latest tax roll in the office of the tax collector of the county. If the address is unknown to the person mailing the notice, cannot with reasonable diligence be ascertained and cannot be found on the latest tax roll, the notice may be addressed to the owner at the county seat of the county where the land is situated."

ORS 368.455 requires that the notice contain a description of the proposed road, the date of presentation to the county court, and, if the road is initiated by petition, the signature of one or more of the petitioners. ORS 368.450 provides that any owner of land

affected by the proposed road who signs the petition waives all further notice.

ORS 368.460 provides that upon presentation of the petition "with satisfactory proof of posting and mailing notice," the county court shall appoint a board of road viewers to survey the proposed road and assess damages. Having done this, the viewers are required to file a report, which must be read at public meetings by the county court at least twice. ORS 368.480, 368.485. ORS 368.490 then provides:

"At any time prior to the expiration of the day on which the report mentioned in ORS 368.480 is publicly read for the second time, any person whose lands are directly affected by the report may file a petition for damages, and any freeholder, residing in the road district where the road is located, whose name does not appear upon the petition, may file a remonstrance against the proposed establishment. * * * Failure to file a petition for damages within the time allowed by this section is a waiver of all rights thereto by every person interested therein, except minors or other persons under disability."

After considering the report by the road viewers and any claims for damages or remonstrances, the county court may adopt or reject the report and enter an order to that effect. ORS 368.495, 368.500. That order may be appealed to the circuit court, as may the award of damages, within 20 days after the report is adopted. ORS 368.525. On appeal, the circuit court's scope of review is limited by ORS 368.535, which provides:

"No final order establishing, altering or relocating any road or highway shall be set aside or annulled upon appeal or review, nor shall any county court refuse to render any such final order, on account of any defect or irregularity in the petition or resolution, or notice thereof, which does not materially affect the substantial rights of an interested party. *The following irregularities are immaterial defects:*

"(1) Errors of description of the intermediate points, courses or distances of the proposed road,

when the proposed road can be otherwise definitely located.

"(2) *Errors in the posting of the notices, where it can be shown that all persons objecting to the proceedings for the proposed road had actual notice* thereof prior to the time of the first reading of the petition or resolution.

"(3) Errors in or omissions of the names of the petitioners appearing on the notice, where no remonstrance is filed." (Emphasis added.)

■ As we read the above statutes, they demonstrate a legislative intent to place the burden of objecting to a proposed road on the property owners who may be affected by the decision to establish or alter the road. At the same time, however, the statutes impose strict requirements on the county to ensure that affected property owners receive actual notice of the proposal insofar as possible. On appeal, an order of the court may not be set aside for minor irregularities, but may be set aside if the irregularity affects the "substantial rights of an interested party."

In establishing a statutory scheme for road development, the legislature was faced with two competing policies. On one hand, it wished to ensure that county orders establishing roads would be final and unassailable. At the same time, it wished to ensure that all parties who might be affected by the road would have an opportunity to participate in the decision-making process. This was particularly true with respect to property owners over whose land the road would be established and who had a property interest as well as a general civic interest in the decision. Accordingly, the legislature, while limiting the nature of the defects that could be used to attack an order, established elaborate procedures for ensuring that affected property owners receive actual notice of the proceedings.

■ From our reading of the statutory scheme, we conclude that with respect to persons whose property must be acquired for the road, compliance with the

[56]

notice requirements contained in ORS 368.445 is indispensable to the validity of the action and that failure to comply with those requirements prevents the county from barring claims for compensation by owners who do not receive notice. We also conclude that compliance with the other statutory requirements is not indispensable to the validity of the action unless the non-compliance in some way renders the notice ineffective. We think this conclusion reflects the balance that the legislature struck in enacting ORS 368.405 *et seq.* To the extent the cases cited above are inconsistent with our holding today, they are disapproved.

■ It follows from this that we must reject plaintiff's claim that the 1952 order by the Lane County Court is "void" because the court's failure to include a statement of public necessity deprived it of "jurisdiction." No contention is or could be made that a statement of public necessity was necessary to give plaintiff's predecessor in interest fair notice of the County Court proceedings.

A different question, however, is presented by plaintiff's second contention. Plaintiff contends, and the Court of Appeals agreed, that where a county court attempts to establish a road "by agreement" pursuant to ORS 368.470(7), it can "obtain jurisdiction" so as to cut off a landowner's claim to compensation only if the record affirmatively shows the agreement of all the affected landowners. Because the signature of plaintiff's predecessor in interest does not appear in the county court records, the Court of Appeals held that the Lane County Court did not have "jurisdiction" when it acted in 1952.

Insofar as the majority opinion of the Court of Appeals refers to the "jurisdiction" of the county court to widen the road, it reflects the analytical error found in past opinions by this court. It also illustrates why we believe it is preferable that the label be abandoned in the context of cases such as this. A county court that

[57]

decides to widen a road is not acting judicially at all but rather is making a policy decision. The concept of jurisdiction is judicial in nature and is out of place in the legislative context.

■■ Nevertheless, we agree with the Court of Appeals' ultimate conclusion. As noted above, we read ORS 368.470(7) as allowing the county to "procure right of way" by "agreement" only if the agreement includes all the property owners whose land will be taken for the road. If the agreement does not include all the property owners, the county may cut off the claims of nonparticipating owners only by complying with the notice requirements contained in ORS 368.445. Either "agreement" or notice is indispensable to the validity of the order if the effect of the order is to deprive persons of their property. We therefore examine the record before us to see if these requirements are met.

The City admits that plaintiff's predecessor in interest did not sign the three pages of "agreement" found in County Road File 2178, and there is nothing else in the record that indicates plaintiff's predecessor agreed to the widening or received notice thereof pursuant to ORS 368.445. The City, however, contends that the statement in Resolution 2178 that the widening of Barger Drive was "[a]ll as agreed to by the property owners abutting on said road" is prima facie evidence that all the affected property owners agreed to the widening, that there is no affirmative evidence to rebut the recitation, and that absent such evidence, the recitation is sufficient to show that the County Court validly widened Barger Drive "by agreement."

We shall assume, without deciding, that a recitation that *all* the affected property owners agreed to the widening would have the effect contended for by the City.[5] The fact remains that Resolution 2178 does

---

[5] *See* ORS 43.370. *But see Lauderback et al v. Multnomah County,* 111 Or 681, 701, 226 P 697 (1924), holding that a journal entry that notice has been posted aiding a defective affidavit must also be supported by some competent evidence of record.

not contain such a recitation. The resolution simply states that the widening was "[a]ll as agreed to by the property owners abutting on said road." It does not necessarily mean to state that the widening was agreed to by *all* the property owners. Given the state of the record, particularly the contents of County Road File 2178, we decline to give the recitation the broader construction contended for by the City. It is just as reasonable to conclude that the recitation was intended to mean that the widening was agreed to by the property owners who signed the three-page document in the file as it is to conclude that the recitation refers to all the property owners.[6] This is particularly true in light of the sequence of events occurring from 1950 through 1952. In 1950, a group of property owners signed the document found by the parties in the county road file. On January 31, 1951, the county court adopted Resolution 2178 declaring that the widening was "all as agreed to by the property owners abutting on said road." There is nothing in the official record, the file, or the stipulated facts to indicate an investigation by the county to determine whether there were property owners abutting Barger Drive in addition to those who signed the document. It is reasonable to conclude from this that the language used in the recitation was intentional, because at the time it adopted Resolution 2178 the county court may not have *known* whether all the property owners agreed to the widening.

---

[6] *See* 1 Freeman on Judgments 812-13 (5th ed 1925) where the author states:

> "The recitals or findings of jurisdiction may affirm, in general terms, the service, or due service, of process, *without indicating that the attention of the court has been specially called to the kind of service made, or that it has based its finding upon other evidence than that disclosed by the record. In such cases it is not reasonable that the general statement should prevail over the evidence contained in the record.* It should rather be construed as referring to and founded upon it; and if the service shown by it is not such as will support the judgment, it should be treated as void, notwithstanding the general statement in the judgment that process has been duly served." (Emphasis added; footnote omitted.)

■ We do not say, of course, that the City's interpretation of the recitation is an unreasonable one. Nevertheless, we believe that if a bare recitation in a public record is to be considered prima facie evidence of the fact alleged, this court should not extend the effect of the recitation beyond what it literally states, at least in cases where the matters dealt with in the recitation concern elements of procedural fairness and there is evidence tending to indicate that the recitation may not have been a carefully considered one. *Cf., State of Oregon v. Officer, supra* (holding a recitation that proof of posting notices had been made "to the satisfaction of the Court" insufficient to prove that it had been made as required by statute).

■ The City also relies on the statutory presumption contained in ORS 41.360(15) that official duty has been regularly performed. We hold that the presumption cannot be applied to establish that the Lane County Court gave notice to plaintiff's predecessor in interest. In a long line of prior decisions, this court has held that a county court that seeks to establish or alter a road can bar the claims of affected property owners to compensation for the taking of their property only if it actually appears in the records that the county complied with the notice statutes. *Lauderback v. Multnomah County, supra; State of Oregon v. Officer, supra; Thompson v. Multnomah County, supra.* We think this rule has developed out of more than a formalistic concern over "jurisdictional" requirements and that the primary concern is one of fairness to the property owners. It is not unreasonable to require the county to make some record, at least by way of "allegation or recital," that notice requirements have been complied with when it attempts to acquire property of others. On the other hand, to "presume" that notice was given simply by virtue of the fact that an order was entered would impose an almost insurmountable burden of proof on the property owner to prove lack of notice, particularly in a case such as this

when the county does not act on its order until over 20 years after it is entered.[7]

■ Moreover, even were we to hold the presumption available in this case, one of the conditions precedent to the operation of the presumption is "that the circumstances of the particular case add some element of probability." *Highway Com. v. Heintz Constr.,* 245 Or 530, 539, 423 P2d 175 (1967). For the reasons stated above, we do not believe the circumstances of this case suggest an element of probability that plaintiff's predecessor in interest received notice of the 1951 proceedings.

Contrary to the position taken by plaintiff, however, we do not conclude from this that the 1952 order is "void" for "lack of jurisdiction." We agree with the conclusion reached by Judge Joseph in his concurring opinion in the Court of Appeals that the failure of the Lane County Court to procure the agreement of plaintiff's predecessor did not deprive the county court of "jurisdiction" to acquire the property of the persons who signed the agreement.

■ The county court complied with the initial requirements of ORS 368.470 when it declared its intention by resolution to widen Barger Drive and when it posted notices to that effect. The passage of the resolution being a legislative act, it was not necessary at this stage of the proceedings for the County to acquire "jurisdiction" over anyone. In order to acquire the property necessary for the road, however, it was necessary that the County comply with the notice requirements contained in ORS 368.445, which include a requirement that notice be mailed to the last known address of each affected owner.

---

[7] As the Court of Appeals noted, the presumption could just as easily operate to require a conclusion that plaintiff's predecessor did not agree to the widening. ORS 41.360(15) establishes a disputable presumption that official duty has been regularly performed. ORS 205.110(2)(d) imposes a duty on the county clerk to file all papers delivered to him for filing. We could therefore assume that the clerk did not receive any documents relevant to Resolution 2178 other than those appearing in County Road File 2178.

[61]

■ With respect to the property owners who joined in the 1950 agreement, however, mailed notice was not required. ORS 368.450 provides that any owner of land who signs the petition authorized by ORS 368.430 waives all further notice. By analogy, and under general common law principles of waiver,[8] a county court that attempts to authorize a road by resolution need not send mailed notice to persons who have signed an agreement to give up their property for the road. It follows that insofar as the property owners who signed the 1950 agreement are concerned, the Lane County Court had the power to acquire their property.

In summation, we hold that (1) the Lane County Court validly acquired the property of those persons who signed the 1950 agreement, and (2) the Lane County Court did not validly acquire the property of plaintiff's predecessor in interest because it does not appear in the record, either by proof or by recital, that plaintiff's predecessor agreed to or received notice of the proposed widening.

## II. Plaintiff's Collateral Attack

The City's second contention is that plaintiff is barred from collaterally attacking the county court's 1952 order because (1) the only means of challenging the 1952 order is by writ of review,[9] and plaintiff's precedessor in interest failed to pursue that remedy, and (2) plaintiff's collateral attack is barred by the passage of time.

■ In light of our conclusion above that Lane County never validly acquired the property of

---

[8] *Wood v. Honeyman,* 178 Or 484, 548, 169 P2d 131, 171 ALR 587 (1946); *Kinkade v. Myers,* 17 Or 470, 21 P 557 (1889); *White v. Northwest Stage Co.,* 5 Or 99 (1873).

[9] ORS 203.200 provides:
    "The decisions of the county court made in the transaction of county business shall be reviewed only upon the writ of review provided by the civil procedure statutes."
The provisions governing the availability of the writ are contained in ORS 34.010-.100.

plaintiff's predecessor in interest, we must reject the City's contention that plaintiff is now barred from seeking a remedy because her predecessor failed to challenge the county court's 1952 order by writ of review. On this point we agree with the analysis contained in Judge Joseph's concurring opinion below:

> "On the record before us, the defendant city simply entered on property it did not own. It did not own it because the County had never got beyond the stage of simply declaring its intention to take the property by resolution * * * and posting the notices." 32 Or App at 326.

13.  We find the City's claim that plaintiff's remedy is barred by the passage of time equally unconvincing. The City argues that plaintiff's predecessor in interest had to challenge the county court decision within 60 days, the period established by the writ of review statute.[10] Alternatively, the City argues that plaintiff's claim is barred by the statutes of limitation because more than 10 years have passed since the order of the county court.[11] Both of these arguments beg the basic question, which is whether or not the 1952 order was binding on plaintiff's predecessor. If it were, plaintiff would lose on the merits. If not, the present controversy simply arises out of a trespass by the City that occurred in 1975.

█  With respect to the City's claim that plaintiff's remedy is barred by the equitable doctrine of laches,

---

[10] ORS 34.030 provides in part:

"* * * A writ shall not be allowed unless the petition therefor is made within 60 days from the date of the decision or determination sought to be reviewed."

[11] ORS 12.050 provides:

"An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. * * *"

ORS 12.115(1) provides:

"In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

ORS 12.140 provides:

"An action for any cause not otherwise provided for shall be commenced within 10 years."

[63]

we are generally in agreement with the analysis contained in the majority opinion of the Court of Appeals. Moreover, even were we to agree with the City that plaintiff was on notice of the County's claim when she purchased her property in 1967, we are aware of no rule of law that would require plaintiff to immediately have brought a declaratory judgment procedure or the like in order to determine whether that claim was valid. There was no actual interference with plaintiff's rights until the City began improving Barger Drive in 1975, and she then asserted her claim immediately. The fact that the City "planned for, held hearings on, financed and began construction of the improved road" did not serve to charge her with knowledge that the City planned to take her property without compensation.

### III. Adverse User

The City's final contention is that the 1952 order by the Lane County Court conferred color of title to the disputed property upon the County and that the County, and now the City, have thus acquired title by constructive adverse possession.

We have recognized that a possessor having color of title to a parcel of land may acquire title by adverse possession of the land described in the deed through the actual possession of only a part. *See, e.g., Arrien v. Levanger,* 263 Or 363, 370, 502 P2d 573 (1972). This doctrine of "constructive adverse possession," however, is applicable only when the land described in the deed is recognized in the community as a single, defined lot. *See* III American Law of Property 820 (Casner ed 1974). The doctrine has no application when the premises consist of several known lots or tracts even though they are described in the same deed. In such a case, each parcel is distinct, and an entry upon one parcel under color of title is not construcive occupancy of all. *Real Estate Co. v. Hendrix,* 28 Or 485, 42 P 514 (1895); *Hicklin v. McClear,* 18 Or 126, 22 P 1057 (1889); *Wilson and Wakeman v. McEwan,* 7 Or 87 (1879).

[64]

■ We find these cases dispositive of the City's claim that it acquired title to the strip of land on plaintiff's property by constructive adverse possession. Even if we assume that the 1952 action by the Lane County Court conferred color of title upon the county to a 50-foot wide right-of-way extending the length of Barger Drive, there is nothing in the stipulated facts to indicate that the County, or the City, actually possessed any part of plaintiff's property until 1975, when the City began construction of the Barger Drive improvements. Plaintiff's property is a distinct parcel of land, and the County's extension of the Barger Drive fences onto the property of others did not enable it to constructively possess the property of plaintiff.

The City also contends that it is entitled to the disputed strip of land under this court's holding in *Huggett v. Moran,* 201 Or 105, 112, 266 P2d 692 (1954), where we said:

> "Whenever a statute prescribes the minimum width of public roads to be established in the future *and a public road is established by prescription,* the width thereof is the minimum necessary to the establishment of a legal road in the absence of evidence of the taking of a greater amount." (Emphasis ours.)

We agree with the Court of Appeals that the City's reliance on *Huggett* is misplaced. Unlike *Huggett,* this case does not involve a road established by prescription, and the reasoning we used in *Huggett* is therefore inapplicable.

The decision of the Court of Appeals is affirmed.