Argued and submitted January 4, affirmed February 10, this decision vacated and the judicial review dismissed by order dated May 24, 1988

HARDING et al,
*Respondents,*

*v.*

CLACKAMAS COUNTY,
*Respondent,*

*and*

SCHURGIN DEVELOPMENT CORPORATION,
*Petitioner.*

(LUBA 87-058; CA A46548)

750 P2d 167

Kenneth M. Elliott, Portland, argued the cause for petitioner. With him on the brief were Kenneth H. Fox and O'Donnell, Ramis, Elliott & Crew, Portland.

Edward J. Sullivan, Portland, argued the cause for respondents Jennifer Harding and East Side Athletic Club. With him on the brief were Mark J. Greenfield and Mitchell, Lang & Smith, Portland.

No appearance by respondent Clackamas County.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner Schurgin Development Corporation (Schurgin) seeks review of LUBA's order reversing Clackamas County's vacation of a portion of Southeast 90th Avenue, a county road, which abuts Schurgin's planned Clackamas Promenade development project. Respondent Harding is the holder of a recorded easement that provides access to the vacated street from the athletic club which she operates.[1] Schurgin was the applicant for the vacation. At the time it applied, Schurgin did not own all of the properties abutting the street, although it was in the process of purchasing them. The county made the vacation order contingent on Schurgin's acquisition of title to the properties.[2] The county followed the summary vacation procedures of ORS 368.351, rather than the procedures of ORS 368.346, and it did not afford Harding the notice and hearing rights which would be required in a proceeding under the latter statute. Harding appealed to LUBA, and LUBA agreed with her, *inter alia,* that the county erred by proceeding under ORS 368.351, by not conducting the hearing and other procedures of ORS 368.346 and by not giving her notice of the hearing pursuant to ORS 368.346(3)(c).

■ The initial question is whether the county's action was a "land use decision," subject to LUBA's review jurisdiction under ORS 197.825. LUBA found that the vacation of "this improved right of way alters the existing traffic pattern of nearby property owners having a right of access to the street." Therefore, LUBA concluded, the decision was one with a "significant impact on present or future land uses in the area" and is reviewable as a land use decision. *See City of Pendleton v. Kerns,* 294 Or 126, 133-35, 653 P2d 992 (1982); *see also Billington v. Polk County,* 299 Or 471, 703 P2d 332 (1985); *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977). We agree and turn to the merits.

ORS 368.351 provides:

"A county governing body may make a determination

---

[1] The athletic club is also a named respondent. We refer to it and Harding collectively as "Harding."

[2] Schurgin advises us that it has since done so.

about a vacation of property under ORS 368.326 to 368.366 without complying with ORS 368.346 if:

"(1) The county road official files with the county governing body a written report that contains the county road official's assessment that any vacation of public property is in the public interest; and

"(2) The proceedings for vacation under ORS 368.326 to 368.366 were initiated by a petition under ORS 368.341 that contains the acknowledged signatures of owners of 100 percent of any private property proposed to be vacated and acknowledged signatures of owners of 100 percent of property abutting any public property proposed to be vacated. The petition must indicate the owners' approval of the proposed vacation."

LUBA concluded that the county did not satisfy any of the prerequisites which that statute establishes for allowing counties to vacate property "without complying with ORS 368.346."[3] The requirement of ORS 368.351(1) was not met, according to LUBA, because the road official's report did not state that the vacation was presently in the public interest,

---

[3] ORS 368.346 provides:

"Except as provided in ORS 368.351:

"(1) When a vacation proceeding has been initiated under ORS 368.341, the county governing body shall direct the county road official to prepare and file with the county governing body a written report containing the following:

"(a) A description of the ownership and uses of the property proposed to be vacated;

"(b) An assessment by the county road official of whether the vacation would be in the public interest; and

"(c) Any other information required by the county governing body.

"(2) Upon receipt of the report under subsection (1) of this section, a county governing body shall establish a time and place for a hearing to consider whether the proposed vacation is in the public interest.

"(3) Notice of the hearing under this section shall be provided under ORS 368.401 to 368.426 by posting and publication and by service on each person with a recorded interest in any of the following:

"(a) The property proposed to be vacated;

"(b) An improvement constructed on public property proposed to be vacated; or

"(c) Real property abutting public property proposed to be vacated.

"(4) During or before a hearing under this section, any person may file information with the county governing body that controverts any matter presented to the county governing body in the proceeding or that alleges any new matter relevant to the proceeding."

but made its favorable recommendation of the vacation contingent on subsequent "resolution of shared access between the Clackamas Promenade project and [Harding's] Athletic Club." LUBA explained that "[a]n equivocal recommendation, based upon a contingency, does not satisfy ORS 368.351(1)."

It then concluded that the conditions of subsection (2) were not met, because Schurgin, the sole signatory of the vacation petition, did not own the abutting property at the time it petitioned, and because Harding, who held a recorded interest in the abutting easement, had not petitioned for or consented to the vacation. LUBA also concluded that Harding was entitled to and had not been given notice pursuant to ORS 368.346(3)(c). *See* note 3, *supra.*

Finally, LUBA ruled that the county's failure to follow the requisite procedure and to provide Harding with the required notice and hearing "is not simply a procedural error, but one which deprives the county of jurisdiction to entertain a road vacation." LUBA based its "jurisdictional" ruling on *this* court's opinion in *Nyman v. City of Eugene,* 32 Or App 307, 574 P2d 332 (1978), *aff'd* 286 Or 47, 593 P2d 515 (1979).

Schurgin contends that each of those conclusions was wrong. It first argues that the road official's report met the requirements of ORS 368.351(1). According to Schurgin, the report contains the condition subsequent "that shared access issues between two private parties be resolved," but

"[t]his condition subsequent does not, in itself, make his report legally insufficient. It merely raises a factual question for the Board of County Commissioners: Have shared access issues been resolved? If not, the road official would not recommend vacating * * * [the street]. However, if the county finds that shared access issues had been resolved, then the condition is met and the road official's report provides the recommendation necessary to satisfy ORS 368.351(1)."

We disagree. ORS 368.351(1) does not come into operation if findings or other actions of the county governing body are necessary to resolve matters which the road official's report leaves contingent. The statute requires an affirmative recommendation by the road official. It is circular to contend, as Schurgin does, that ORS 368.351(1) allows the governing body to conduct summary vacation proceedings, in the

absence of the unqualified administrative recommendation which the statute makes a condition of its doing so, if the governing body later finds facts which did not exist when the administrative report was submitted and the non-existence of which prevented an unqualified recommendation.

Schurgin relies on *Portland Baseball Club v. Portland,* 142 Or 13, 18 P2d 811 (1933), and *Ayres v. City Council of Cannon Beach,* 31 Or App 1337, 572 P2d 664 (1977), *rev den* 282 Or 537 (1978), for the proposition that it is permissible to make street vacations dependent on conditions subsequent. In both cases, however, the conditions subsequent were established by the governing bodies in the ordinances that they enacted to authorize the vacations. The cases lend no support to Schurgin's contention that the road official's recommendation suffices under ORS 368.351(1) if it is a contingent one. We agree with LUBA that a recommendation must be unequivocal to satisfy the criterion of ORS 368.351(1) for dispensing with the procedures of ORS 368.346.

■ We also agree with LUBA that Schurgin's interests in the abutting properties at the time when it petitioned for the vacation were not adequate to satisfy ORS 368.351(2). Schurgin concedes that, at the time it petitioned and at the time of the county proceedings, it "did not yet fall within the definition of 'owner' " in ORS 368.001(4). Schurgin argues, however, that the county's condition subsequent that Schurgin acquire fee title "is a permissible method for assuring compliance with the statute before a vacation order can become effective." The problem with that argument is similar to the problem with the ORS 368.351(1) argument. The statutory provision which concerns us does not deal with the necessary conditions for a vacation order *to take effect;* it deals with conditions which must exist when a vacation proceeding is *initiated* and which are determinative of what procedures must be followed for a vacation order to be *validly adopted.*

Schurgin also argues that LUBA erred in concluding that Harding's consent to the vacation was necessary to satisfy ORS 368.351(2). It is unnecessary for us to reach that argument, because, for the other reasons that we have discussed, the county did not meet the requirements of either subsection of ORS 368.351 for ordering a street vacation without following the ORS 368.346 procedures.

■    Schurgin next contends that LUBA erred by holding that Harding was entitled to notice and hearing rights under ORS 368.346(3)(c). That statute provides that, "[e]xcept as provided in ORS 368.351," notice of the hearing to be conducted under the section must be served on "each person with a recorded interest" in "[r]eal property abutting public property proposed to be vacated." LUBA based its conclusion on an elaborate analysis of the relationship among various provisions of ORS chapter 368, including ORS 368.346 and ORS 368.351. We agree with LUBA's conclusion—albeit not necessarily the analysis by which LUBA reached it—that Harding was entitled to and was not provided with notice in accordance with ORS 368.346(3)(c). If ORS 368.351 were applicable, she would not have been entitled to notice under the statutes,[4] because ORS 368.351 excuses compliance with ORS 368.346 when the requirements of the former are met, and the latter prefaces all of its requirements with the words "except as provided in ORS 368.351." However, we have held that ORS 368.351 was not satisfied and that the ORS 368.346 procedures were therefore required. It follows, without more, that Harding was entitled to the notice required by ORS 368.346(3)(c).

■    The next question is what effect the county's failures to follow the procedures of ORS 368.346 and to give Harding the required notice have on the county's decision and on our disposition. LUBA held that those failures deprived the county of "jurisdiction" and, in effect, rendered its decision a nullity.[5] In *Nyman v. City of Eugene, supra,* the issue, *inter alia,* was whether Lane County had validly acquired the plaintiff's property, pursuant to *former* ORS 368.405 *et seq,* for the purpose of widening a county road. The Supreme Court said:

"From our reading of the statutory scheme, we conclude

---

[4] Our holding that notice was required under the statutes makes it unnecessary to address constitutional issues, even assuming that Harding has sufficiently raised them.

[5] Although Harding did not receive notice of the kind required by statute, she did become aware of the proceedings 18 hours before they began. LUBA stated that she was "indeed able to participate in the proceeding though under rather inconvenient circumstances." It then noted that, if the county's errors had been "simply procedural" rather than "jurisdictional," it would not have reversed or remanded. It explained that, "[w]hile the question is a close one, we conclude [that] the inconvenience [Harding and her athletic club] articulate do not amount to prejudice to their substantial rights." *See* ORS 197.835(8)(a)(B).

that with respect to persons whose property must be acquired for the road, compliance with the notice requirements contained in ORS 368.445 is indispensable to the validity of the action and that failure to comply with those requirements prevents the county from barring claims for compensation by owners who do not receive notice. We also conclude that compliance with the other statutory requirements is not indispensable to the validity of the action unless the noncompliance in some way renders the notice ineffective.

"* * * * *

"* * * Plaintiff contends, and the Court of Appeals agreed, that where a county court attempts to establish a road 'by agreement' pursuant to ORS 368.470(7), it can 'obtain jurisdiction' so as to cut off a landowner's claim to compensation only if the record affirmatively shows the agreement of all the affected landowners. Because the signature of plaintiff's predecessor in interest does not appear in the county court records, the Court of Appeals held that the Lane County Court did not have 'jurisdiction' when it acted in 1952.

"Insofar as the majority opinion of the Court of Appeals refers to the 'jurisdiction' of the county court to widen the road, it reflects the analytical error found in past opinions by this court. It also illustrates why we believe it is preferable that the label be abandoned in the context of cases such as this. A county court that decides to widen a road is not acting judicially at all but rather is making a policy decision. The concept of jurisdiction is judicial in nature and is out of place in the legislative context.[6]

"Nevertheless, we agree with the Court of Appeals' ultimate conclusion. As noted above, we read ORS 368.470(7) as allowing the county to 'procure right of way' by 'agreement' only if the agreement includes all the property owners whose land will be taken for the road. If the agreement does not include all the property owners, the county may cut off the claims of nonparticipating owners only by complying with the notice requirements contained in ORS 368.445. Either 'agreement' or notice is indispensable to the validity of the order if the effect of the order is to deprive persons of their property." 286 Or at 56.

The same reasoning is applicable here. The county's

---

[6] We express no view about whether the proceedings in *Nyman,* or those which should have been followed here, are legislative or quasi-judicial in nature. *See Ayres v. City Council of Cannon Beach, supra,* 31 Or App at 1341 n 3.

invocation of ORS 368.351 and its concomitant failure to comply with ORS 368.346 violated a statutory notice requirement. Here, as in *Nyman,* either Harding's agreement or her being given the notice prescribed by statute was essential to the validity of the county action which destroyed Harding's enjoyment of her easement. Although LUBA used the disfavored word "jurisdictional," instead of the word "validity" preferred by the Supreme Court, it correctly concluded that the street vacation was a nullity, and it was therefore correct in reversing the county's decision.

Schurgin also assigns error to LUBA's conclusion that the county's decision violated ORS 368.331, which provides:

> "A county governing body shall not vacate public lands under ORS 368.326 to 368.366 if the vacation would deprive an owner of a recorded property right of access necessary for the exercise of that property right unless the county governing body has the consent of the owner."

That conclusion bears on the legal merits of the county's decision. Because the decision itself is a nullity, we do not address the assignment.[7]

Affirmed.

---

[7] If there were a remand, the question would warrant discussion as one likely to arise in later proceedings. However, there is nothing to remand.