ANGUS HUNT RANCH, INC., a Montana Corporation, and Charles L. Carlson and Jeanne H. Carlson, husband and wife, Appellants (Plaintiffs below),

v.

REB, INC., a Wyoming Corporation, and the First National Bank and Trust Company of Wyoming, a National Banking Association, Appellees (Defendants below).

No. 4843.

Supreme Court of Wyoming.

April 24, 1978.

Bernard Q. Phelan, Cheyenne, for appellants.

Jerome F. Statkus, of Carmichael & Statkus, Cheyenne, for REB, Inc., appellee.

James O. Wilson, of Loomis, Lazear, Wilson & Pickett, Cheyenne, for The First National Bank and Trust Company of Wyoming, appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This appeal arises out of an attempted forfeiture and cancellation of a Contract for Sale of land by appellee, REB, Inc., the seller, against the appellants, Angus Hunt Ranch, Inc., and Charles L. Carlson and Jeanne H. Carlson, the buyers. After receiving notice by letter, dated March 3, 1977, of the seller's election to declare a forfeiture under the terms of the contract, appellants instituted an action for a declaratory judgment, asking the court to make certain declarations with respect to the contract, and for an injunction against the appellee-bank, as escrow agent. Appellants subsequently moved and were allowed to amend their complaint, adding a claim for restitution in the event seller's counterclaim for a declaration of forfeiture was granted. A trial on the merits was held on April 4, 1977, before the district court, sitting without a jury. At the close of buyers'-appellants' evidence, the seller's motion to dismiss, for failure of appellants to sustain the burden of proof required, was granted; its counterclaim was sustained and the bank was instructed to deliver the escrow papers to the seller. We will affirm this disposition of the case.

On June 8, 1973, a Contract of Sale was entered into between the seller and the buyers. The contract generally provided for the sale to the buyers of real property, buildings, improvements, equipment and animals, comprising the seller's swine operation, for a total purchase price of $215,000.00. Under the relevant contract provisions regarding payment, the buyers were to: (1) make a down payment of $20,000.00; (2) assume and pay a $95,448.39 note, secured by a mortgage executed by the sellers, to the First National Bank and Trust Company of Wyoming; (3) assume and pay an $8,837.66 note and mortgage to Capitol Savings and Loan Association; (4) make annual installment payments on principal and interest at seven percent (7%) per annum on the unpaid balance of $83,623.75, beginning on April 1, 1974, and continuing thereafter on each April 1, until April 1, 1983, when the entire principal balance, together with interest, had been paid in full. A "time is of the essence" clause was included in the contract. In addition, the buyers agreed to: provide annual, audited financial statements; maintain an accredited swine herd of not less than 170 sows, and a total animal population of not less than 750 animals; furnish monthly animal inventories; maintain improvements in good order and repair; not further encumber the property; pay all taxes and assessments; and maintain adequate insurance on the assets purchased.

The contract provides that if relevant payments are not timely made, forfeiture penalties may be imposed within 60 days of due date. If any of the other material covenants are not performed, the seller is, by the contract, released from all obligations, whereupon buyers shall forfeit all rights to the property, with seller's immediate right to take possession, and prior payments are to be retained as liquidated damages. In lieu of the seller's rights described above, seller could declare due and payable the then unpaid balance. The buyers were given a "right of redemption," consisting of an obligation to pay all remaining principal and interest within six months in the event forfeiture had been declared.

As part of its March 3, 1977, forfeiture letter to the buyers, the seller alleged the following acts of default: The contract had been breached by the buyers in that the interest, taxes and insurance had not been paid. It was further alleged that financial statements and animal inventories had not been furnished and that the animal level had, without authority, been permitted to drop below the agreed-upon levels. Lastly, it was further contended that the buyers had permitted the property to run down— all in violation of the contract provisions.

At trial, the buyers' own evidence disclosed that they had not complied with the contract in several respects. Nevertheless, it was the buyers' position in the trial court, and now on appeal, that:

1. The Contract of Sale should be construed to be an equitable mortgage, and

2. The seller, by its conduct, has waived its right to declare a forfeiture on the basis of the alleged acts of default.

## MOTION TO DISMISS

■ Before we discuss these issues, it is necessary to generally consider the propriety of granting a motion to dismiss and the standards by which we will review such a disposition. It is conceded by the parties that the trial court treated the seller's motion to dismiss as a motion made pursuant to Rule 41(b)(1), W.R.C.P.[1] Prior to the amendment of this rule in 1970—at which time the fourth sentence of the relevant subsection was added—we considered the quantum and quality of the evidence which would justify a court's granting such a motion. In *Arbenz v. Bebout*, Wyo., 444 P.2d 317, we embraced the so-called Alaskan rule by quoting from *Rogge v. Weaver*, Alaska, 368 P.2d 810, 813, as follows:

" 'Where plaintiff's proof has failed in some aspect the motion should, of course, be granted. Where plaintiff's proof is overwhelming, application of the rule is made easy and the motion should be denied. *But where plaintiff has presented a prima facie case based on unimpeached evidence* we are of the opinion that the trial judge should not grant the motion

even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof. We believe that in the latter situation the trial judge should follow the alternative offered by the rule wherein it is provided that he " * * * may decline to render any judgment until the close of all the evidence", and deny the motion * * *.' " [Emphasis supplied]

In doing so, we said:

". . . Such disposition, undoubtedly meritorious in jurisdictions such as Alaska, which follow exactly the federal rule requiring findings, becomes particularly essential in Wyoming where findings are not obligatory." 444 P.2d at 319.

We went on to hold that in reviewing the grant of such a motion, the entire evidence must be viewed most favorably to plaintiff, giving him the benefit of all reasonable inferences which may be deduced therefrom. *Arbenz v. Bebout*, supra. Implicit in adoption of the Alaskan rule was our recognition of the "prima facie" [2] test, as opposed to the federal weighing-of-evidence standard [3], which was to be applied by trial judges seeking to resolve Rule 41(b) motions. We find no reason to depart from the *Rogge* prima facie test, merely because our rule now follows the federal rule requiring findings, since this test is "more

---

1. Rule 41(b)(1), W.R.C.P., provides:

"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. *If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).* Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided

for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." [Emphasis supplied]

The emphasized portion of the rule was added by amendment in 1970.

2. "Prima facie case" is defined by Black's Law Dictionary 4th Ed.Rev. (1968), at 1353, as "such as will suffice until contradicted and overcome by other evidence (case cited)."

3. Under the federal test, the trial court need not consider the evidence in a light most favorable to the plaintiff. *Woods v. North American Rockwell Corporation*, 10 Cir., 480 F.2d 644. See, generally, 5 Moore's Federal Practice, § 41.13; 9 Wright and Miller, Federal Practice and Procedure: Civil § 2371; and 55 A.L.R.3d 272.

likely to achieve justice and reduce the number of appeals resulting from the application of Rule 41(b)." *Trusty v. Jones,* Alaska, 369 P.2d 420, 422. Accord, *Tillman v. Baskin,* Fla., 260 So.2d 509; and *King v. Alaska State Housing Authority,* Alaska, 512 P.2d 887. As a result, if the appellants-plaintiffs in the instant case "presented a prima facie case based on unimpeached evidence," then the trial court erred in dismissing their action under Rule 41(b).[4] In making this determination, this court will view the evidence in a light most favorable to the plaintiffs, just as the trial court should have done, and presumably did, in considering the seller's motion.

### EQUITABLE–MORTGAGE THEORY

■ In order to establish a prima facie case on their equitable-mortgage theory, the buyers were required to show that the parties intended the transaction to be a mortgage, rather than an installment land contract, as construed from their written agreement and the surrounding circumstances. *Baldwin v. McDonald,* 24 Wyo. 108, 156 P. 27; and 59 C.J.S. Mortgages § 10a. There must have been an intent to create a security or, in other words, there must be proof that the maker intended the property to be held, given or transferred as security. 1 Jones on Mortgages, § 225, at 262–263. It has been observed that there is little possibility that a court will construe an installment land contract as a mortgage, assuming that it does not depart too far from the usual contract terms and provisions. Rudolph, The Wyoming Law of Real Mortgages, at 147.

■ Appellants contend that they made the requisite showing by virtue of the contract provisions, which grant them a "right of redemption" for a period of six months after default, and the seller's con-

duct allegedly waiving its right to forfeiture. While it may be conceded, arguendo, that a seller may waive his right to declare an automatic forfeiture through conduct which has been characterized as acquiescence, it cannot be said that such acquiescence discloses an intention to treat the transaction as creating a mortgage. The primary effect of such conduct, as pointed out by appellants in their waiver argument, is to preclude the vendor from exercising its right to forfeiture *until* the vendee is put on notice that future defaults will not be countenanced and strict compliance will be required. *Baker v. Jones,* 69 Wyo. 314, 240 P.2d 1165, 1171. Furthermore, we fail to see how the language of this contract converts it into an equitable mortgage. See, *Bishop v. Beecher,* 67 N.M. 339, 355 P.2d 277. The presence of the right-of-redemption provision, without further evidence of the parties' intention and without any further indications arising from the contract itself, is not sufficient—as a matter of law—to convert this installment land contract into an equitable mortgage. At most, this provision was a contingency placed in the contract for the buyers' benefit, aimed at lessening the harshness of a forfeiture. To provide for such a revivor possibility does not mean that the buyers are entitled to the same or all of the protections afforded by a mortgage. We hold the buyers failed to establish a prima facie case with respect to their equitable-mortgage theory. This does not mean that, in appropriate cases, buyers will not be entitled to equitable remedies, such as restitution. Cf., *Quinlan v. St. John,* 28 Wyo. 91, 201 P. 149, reh. den. 28 Wyo. 91, 203 P. 1088; and *Lawrence v. Demos,* 70 Wyo. 56, 244 P.2d 793.[5]

### WAIVER THEORY

■ We must also determine whether the appellants established a prima facie

---

4. It is noted that our present Rule 41(b)(1) requires that in cases like the present, findings shall be made under Rule 52(a), W.R.C.P. Although not properly raised in this case, it is apparent that, in appropriate cases, the failure to comply with this requirement may require a remand. *Denofre v. Transportation Ins. Rating Bureau,* 7 Cir., 532 F.2d 43.

5. While the buyers amended their complaint to seek such equitable relief, the trial court found that the seller was entitled to retain all sums paid by the buyers since such sums were reasonably related to the seller's actual damages. The appellants did not challenge that finding on appeal.

case in support of their waiver theory. Most litigation in this area concerns itself with failure to make timely payments under a land contract, but we see no reason why the pertinent rules are not equally applicable to any failure to strictly comply with other material contract provisions. In order to establish a prima facie case of waiver, the vendee must show that the vendor has condoned or assented to previous defaults and has not given notice of his intention to insist on strict compliance in the future. See, *Baker v. Jones*, supra; and *Jones v. Clark*, Wyo., 418 P.2d 792, 797. See, also, *Nelms v. Miller*, 56 N.M. 132, 241 P.2d 333, 348; 77 Am.Jur.2d, Vendor and Purchaser, § 588; and 17A C.J.S. Contracts § 409. The effect of such conduct is not, however, a waiver of a vendor's right to declare a forfeiture for future defaults. *Jones v. Clark*, supra.

We said in *Baker v. Jones*, at 240 P.2d 1171–1172:

"It is now well established in law and in equity that forfeitures are not favored. Before one can declare a forfeiture it must appear that he has a clear right and then too he himself must be free from blame in the premises. Every reasonable presumption is against a forfeiture and every intendment and presumption is against a person seeking to enforce it. 17 C.J.S. Contracts, § 407 page 896. 'Provisions for forfeiture may be waived and the courts are quick to take advantage of circumstances indicating such an intention.' 17 C.J.S. Contracts § 409, page 897. And, 'So where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind until full notice and a reasonable time for performance is given.' 17 C.J.S. Contracts § 506, page 1081. . . .

"In line with the holdings of other courts, this court has taken the opportunity to say that, 'Forfeitures are not favored, and it is said that slight evidence of the lessor's intention to relinquish his right is sufficient to warrant the finding of waiver.'

"*Investors Guaranty Corp. v. Thomson*, 31 Wyo. 264–273, 225 P. 590, 592, 32 A.L.R. 1071; *Pacific-Wyoming Oil Co. v. Carter Oil Co.*, 31 Wyo. 314–329, 226 P. 193, and in the late case of *Larsen Sheep Co. v. Sjogren*, 67 Wyo. 447–465, 226 P.2d 177, 178, this court states, 'Forfeiture of lease for breach of covenant or condition therein may be waived and, forfeiture not being favored, slight circumstances will at times suffice to constitute a waiver.' "

■ Viewing the evidence in a light most favorable to the appellants-buyers, it is apparent that buyers did establish a prima facie case of waiver concerning most of the alleged acts of default. With respect to the buyers' obligation to make interest payments to the seller, the evidence discloses that the buyers made one interest payment, of $5,853.66, on April 30, 1974, and, although no interest payments were made in 1975 or 1976, the seller gave no notices of default until the letter of March 3, 1977. Even then, the seller did not demand that the buyers become current on or within a reasonable time after the April, 1977, payment date. Rather, it demanded that buyers vacate the premises by March 18, 1977, or be subject to eviction. Furthermore, the evidence discloses that the seller made no demands with respect to past due taxes, the annual audits, the monthly inventories, or the condition of the premises. The seller could not legally declare a forfeiture on any of these grounds without first giving the buyers notice of its intention to insist on strict compliance, and additionally giving the buyers a reasonable time within which to perform or cure continuing defaults.

■ The matter of the reduction in the number of animals is an entirely different fact situation. The buyers' evidence disclosed that by February, 1977, there were only 114 animals on the property, of which only 44 to 50 were sows. There is no evidence that the seller had authorized or had *prior knowledge* of these drastic animal reductions, even though seller and the bank were aware that the buyers had changed

from a farrow-to-finish operation to a feeder-pig operation. Plaintiff, Charles L. Carlson, acknowledged the importance of maintaining adequate numbers of animals. There being no evidence that the seller had condoned the animal reduction, or had prior knowledge thereof, the seller was entitled to declare a forfeiture on the basis of the breach of this material condition of the contract.

We hold, therefore, that the appellants failed to establish a prima facie case of waiver with respect to all of the alleged acts of default, and particularly with respect to the reduction of the animal population without seller's knowledge or acquiescence. Failing this, the trial court correctly found that the seller was entitled to rescind the contract and to retake possession under its provisions. There was no necessity for the seller to put on further evidence in order to sustain its counterclaim. Finally, it was appropriate to grant a six-month redemption period to the appellants since this was an agreed-to provision of the contract.

Affirmed.