Alice T. GREASER, William Paul Greaser and Kerry John Greaser Trustees of the Gerald J. Greaser Trust, as Successor In Interest of G.J. Greaser, Edith B. Chase and Jack Patton, Appellants (Plaintiffs),

v.

Earl L. WILLIAMS, Jr., and Edith M. Williams, Appellees (Defendants).

Earl L. WILLIAMS, Jr., and Edith M. Williams, Appellants (Defendants),

v.

Alice T. GREASER, William Paul Greaser and Kerry John Greaser Trustees of the Gerald J. Greaser Trust, as Successor In Interest of G.J. Greaser, Edith B. Chase and Jack Patton, Appellees (Plaintiffs).

Nos. 84–137, 84–138.

Supreme Court of Wyoming.

July 16, 1985.

Rehearing Denied Aug. 15, 1985.

of $23,085. The Williamses answered that they had given the note in payment of the interest due on a conditional contract for the sale of real property and that the subsequent forfeiture of that contract by the plaintiffs/sellers caused the note to fail for lack of consideration. The defendants counterclaimed for a partial refund of the interest paid under the conditional sales contract and for restitution of the down payment and other benefits conferred upon the plaintiffs/sellers under the contract.

The trial court dismissed the Williamses' claim for a refund of excess interest and entered summary judgment against them with respect to their counterclaims for restitution. The court agreed with the defendants concerning the enforceability of the promissory note and entered summary judgment in their favor. Both sides have appealed the trial court's rulings.

Our review of the record reveals that questions of fact exist which are material to the plaintiffs' right to recover on the promissory note. We will, therefore, reverse the summary judgment entered against them. We will affirm the trial court's rulings in all other respects.

Philip Nicholas of Corthell & King, Laramie, for appellants (plaintiffs) in No. 84–137 and appellees (defendants) in No. 84–138.

Earl L. Williams, Jr., Barkley R. Bonine, Laramie, for appellees (plaintiffs) in No. 84–137 and appellants (defendants) in No. 84–138.

Before * THOMAS, C.J., and ROSE, ** ROONEY, BROWN and CARDINE, JJ.

ROSE, Justice.

This case arose as an action by the trustees of the Gerald J. Greaser trust, Edith B. Chase, and Jack Patton to enforce a promissory note executed by Earl L. Williams, Jr. and Edith M. Williams in the sum

## FACTS

On November 29, 1978, G.J. Greaser, Alice T. Greaser, Edith B. Chase and Jack Patton, as sellers, entered into a Real Estate Sales Contract with Earl L. Williams, Jr. and Edith M. Williams, as buyers. The contract described, in terms of lots and blocks, a parcel of land in Albany County, Wyoming, "containing 15 acres more or less." The contract specified a total sale price of $300,000, with $15,000 to be paid initially and the balance to be paid in ten annual installments beginning November 29, 1979. Interest was payable annually at the rate of nine percent on the unpaid balance. Paragraph (5) of the contract provided that the buyers would receive an acre of land for each $20,000 paid on the principal:

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral arguments.

"That BUYERS shall receive the Deed to any of the above acreage of their choice from time to time by paying to the escrow agent the sum of $20,000.00 per acre, which sum is to be credited to the reduction of the principal, plus interest upon the unpaid balance from date of last payment on the contract. Deeds containing said acreage tracts pursuant to this provision shall always involve contiguous descriptions with the borders of the above tract. The $15,000.00 initial payment cannot be applied toward releasing acreage under this sub-paragraph."

The buyers agreed to contribute one-half of the land necessary for streets on the east and west sides of the subject property and to pay for their share of street improvements at the time of installation. The sellers had the right to declare a forfeiture of the contract upon the buyers' default:

"IT IS FURTHER EXPRESSLY AGREED that time is of the essence of this agreement and the failure on the part of the BUYERS to keep and perform any of the conditions herein provided for, shall work a forfeiture of this agreement at the option of the SELLERS, and the SELLERS shall have the right to take immediate possession of said remaining premises or to institute legal proceedings to recover for the breach of the terms hereof and for the unpaid balance in full remaining unpaid on this contract, and the BUYERS agree in case of such default and upon written demand of the SELLERS, either in person or by registered letter, that the BUYERS will deliver up possession of said premises and all sums paid by the BUYERS hereunder shall be forfeited to the SELLERS."

The parties subsequently entered into an agreement to correct an error in the property description in the Real Estate Sales Contract. The new agreement expressly provided that all other terms and conditions of the original contract would remain unchanged.

The Williamses made the down payment of $15,000 in November, 1978, and paid the first installment of $28,500 toward the principal and $25,650 in interest in November, 1979. In exchange for their payment of $28,500 on the principal, the Williamses received a deed to 1.425 acres of the land.

The following year, instead of paying the second installment, the buyers executed the promissory note which is the subject of this lawsuit. The note was issued for the amount of accrued interest under the Real Estate Sales Contract and was made payable to the sellers on November 29, 1981, one year after the date of the note. The parties disagree as to whether the note was given in partial payment of the amount due under the sales contract or to induce the sellers to forbear declaring a forfeiture.

In any event, the sellers did not exercise their rights to terminate the Real Estate Sales Contract, although the buyers failed to pay the 1980 and 1981 installments. On August 3, 1982, the sellers, acting through their agent, Paul Greaser, sent a letter to Mr. Williams, proposing a means by which the buyers could cure their default. The sellers offered to maintain the contract in effect if the buyers would agree to an increase in the annual rate of interest to 15½ percent on the amounts due under the sales contract and the promissory note and would pay all sums due under both agreements by August 31, 1982. The letter stated that the sellers intended to give notice of default and to declare the sales contract null and void if the Williamses failed to accept the proposal or failed to bring their payments current by August 31, 1982. The letter further informed the buyers that in the event of forfeiture of the contract,

"* * * the personal note you signed would still be outstanding."

The Williamses accepted the terms of the proposal by signing the letter on August 9, 1982. They expressly noted that their acceptance of the proposal did not constitute a waiver of any rights they had or would have under the sales contract.

The buyers failed to abide by the terms of the August, 1982, letter agreement. Accordingly, on November 3, 1982, Paul Greaser, acting on behalf of "Chase, Pat-

ton and Greaser, Sellers," sent written notice to the Williamses, declaring the Real Estate Sales Contract to be in default and demanding possession of the property:

"Please be advised that the above referenced contract [Real Estate Sales Contract, dated November 29, 1978, Chase, Patton and Greaser, Sellers] is in default and pursuant to the terms of the contract, this letter is formal notice to you of your default under the terms and conditions of said contract and our written demand for you to deliver up possession of the premises immediately. We intend to terminate the escrow account located at the First Wyoming Bank and obtain possession of all documents contained therein."

The notice also demanded payment of all sums due under the promissory note:

"You should also be advised that we are in possession of your Promissory Note dated November 29, 1980 in the original principal amount of $23,085.00, which note bears interest at the rate of 10% from said date. Demand is hereby made of all sums due pursuant to said note, the interest due thereon being approximately $4,600.00 together with the original principal amount of $23,085.00, making the total amount due approximately $27,685.00."

The sellers subsequently withdrew from escrow all documents pertaining to the sale and retained the $15,000 initial payment plus the value of various improvements to the land as liquidated damages. The improvements consist of a street and a water line installed by the Williamses at a total cost of $92,586.33. Notwithstanding their formal declaration of forfeiture, the sellers have offered to accept full performance of the contract by the buyers.

When the Williamses failed to pay the amounts due under the promissory note, the trustees of the Gerald J. Greaser trust, successor in interest to payee G.J. Greaser, deceased, and payees Chase and Patton initiated this action. The Williamses counterclaimed for restitution and adjustment of interest payments under the terminated Real Estate Sales Contract. The trial court dismissed the counterclaim for a refund of excess interest, as failing to state a basis for relief. The plaintiffs then filed a motion for summary judgment, but did not file a supporting affidavit until approximately one week later. The district court denied the motion for summary judgment, ruling that the supporting affidavit was untimely and could not be considered under this court's holding in *DeHerrera v. Memorial Hospital of Carbon County*, Wyo., 590 P.2d 1342 (1979). The plaintiffs filed a second motion for summary judgment, supported by the pleadings and the previously filed affidavits of Paul Greaser and Earl Williams. The trial court entered summary judgment against the plaintiffs with respect to their claim on the promissory note and against the Williamses on their counterclaims for restitution. All parties have appealed.

## ISSUES AND STANDARD OF REVIEW

The trustees of the Gerald J. Greaser trust, Edith B. Chase and Jack Patton present the following issue for review:

"[Defendants/Buyers] executed a promissory note to [Plaintiffs/Sellers] in the amount of interest accrued on a contract for sale of real property to induce [the Plaintiffs/Sellers] not to declare a default. Was that note supported by consideration?"

The Williamses question the factual and legal bases for summary judgment on their counterclaims:

"1. The first issue presented for review is whether the facts averred to in the affidavits are material to the causes of action named in the [Defendants/Buyers'] Counterclaim for return of the Fifteen Thousand Dollars paid for the purchase of land, which was misdescribed by the [Plaintiffs/Sellers]; for return of money spent by [Defendants/Buyers] for permanent improvements on the land for which [Plaintiffs/Sellers] control documents of ownership; and for return of interest overpaid because of [Plain-

tiffs/Sellers'] misdescription of the tract of land.

"2. The second issue presented for review is whether, as a matter of law, the [Plaintiffs/Sellers] are entitled to summary judgment and retain moneys under their contract which misdescribed the tract of land to be conveyed, which provided for the conveyance of portions of the land upon payment and which was never terminated by a party to the contract."

Our review of these questions is governed by the fundamental rule that summary judgment properly issues only upon the dual findings that no genuine question of material fact exists and that the prevailing party is entitled to judgment as a matter of law. *Rompf v. John Q. Hammons Hotels, Inc.,* Wyo., 685 P.2d 25 (1984); *Matter of Estate of Brosius,* Wyo., 683 P.2d 663 (1984). To determine the propriety of a summary judgment, we must examine the record in the light most favorable to the party against whom the summary judgment was entered and give to that party the benefit of all inferences which properly can be drawn from the available evidence. *Rompf v. John Q. Hammons Hotels, Inc.,* supra. If we find that an inquiry into the facts was necessary for the proper application of the law, we must overturn the summary judgment. *Kimbley v. City of Green River,* Wyo., 642 P.2d 443, 446 (1982).

With these standards in mind, we will consider first the facts and law which control the plaintiffs' rights to enforce the promissory note. We will then examine the defendants' rights upon termination of the Real Estate Sales Contract to recover (1) the $15,000 initial payment, (2) the value of improvements to the land, and (3) $969.93 in interest allegedly overpaid as a result of a mistake in the property description set out in the contract. Finally, we will consider the defendants' contention that the district court had no authority to grant the plaintiffs' second motion for summary judgment following denial of their first motion.

## ENFORCEABILITY OF THE PROMISSORY NOTE

The district court concluded that the promissory note was given "in lieu of required cash payments" under the Real Estate Sales Contract. Citing this court's holding in *Portner v. Tanner,* 30 Wyo. 85, 216 P. 1069, 30 A.L.R. 624 (1923), the trial court reasoned that the plaintiffs could not forfeit the sales contract and then, at a later date, attempt to collect payments owed under that contract. The district court judge entered summary judgment in favor of the makers of the note, holding

" * * * the plaintiff cannot forfeit the contract at one time and then sue for recovery of payments not made at a later date. * * * [W]hen the plaintiffs terminate the contract, they abandon all rights to recover any money due which has not actually been paid."

In *Portner v. Tanner,* supra, the buyer had given the seller two checks as initial payment on an installment contract for the deed to real property. The buyer stopped payment on the checks and failed to make any of the monthly payments under the contract. The seller sold the property to another individual and brought an action on the countermanded checks. This court held that the seller could not disaffirm the contract and then maintain an action to recover the unpaid purchase money. The court reasoned that the checks, like a note given in pursuance of an agreement, were merely evidence of an indebtedness stemming directly from the agreement. Since execution of the contract provided consideration for the checks, forfeiture of the contract rendered the checks null and void.

The plaintiffs in the instant case contend that the holding in Portner v. Tanner does not apply since the promissory note at issue here was given not as payment toward the purchase price, but to induce the sellers to refrain from terminating the contract. Plaintiffs urge that their forbearance constituted valid consideration for the note, independent of the conditional sales contract.

■ We recognize that a promise to forbear exercising one's rights can supply the consideration necessary to support a contract. *Laibly v. Halseth*, Wyo., 345 P.2d 796, 799 (1959); *Horvath v. Sheridan-Wyoming Coal Co.*, 58 Wyo. 211, 131 P.2d 315, 331 (1942). We also recognize that the sellers cannot terminate a conditional sales contract and then recover a past-due payment evidenced by a promissory note. *Portner v. Tanner*, supra. Thus, the plaintiffs' right to recovery in the case at bar depends upon whether the note was given in exchange for an extension of time within which to perform the installment contract or was given in partial payment of the contract. The affidavits filed by the parties contradict one another with respect to this crucial factual question.[1]

The Williamses urge this court to ignore the affidavit submitted for the plaintiffs by Paul Greaser, on the ground that Greaser lacks personal knowledge of the circumstances surrounding execution of the note and sales contract. The defendants point out that Paul Greaser was not a party to either agreement, whereas Earl Williams based his affidavit for the defendants on his personal knowledge as a buyer under the sales contract and a maker of the note.

■ We have refused in the past to consider for summary-judgment purposes an affidavit made without personal knowledge of the facts by one who would not be competent to testify to such matter. *Apperson v. Kay*, Wyo., 546 P.2d 995, 996 (1976); Rule 56(e), W.R.C.P.[2] However, Paul Greaser appears to possess direct knowledge of the information provided in his affidavit. He states that he is familiar with the facts relevant to the execution of the Real Estate Sales Contract and that he keeps the records of the transaction. The documents attached to the affidavits of both parties establish that Greaser acted as the sellers' agent in negotiations with the buyers concerning matters pertinent to the contract and note. Since Greaser would be competent to testify at trial as to facts within his knowledge as the agent for the sellers, his affidavit provides evidence of such matters for purposes of summary judgment.

Evidence in addition to the plaintiffs' affidavit suggests that the buyers may have given the note in exchange for an extension of time within which to perform the sales contract. For example, the promissory note was made payable one year from the date of execution; the letter agreement of August, 1982, refers to the note as independent of the sales contract; and the sellers actually delayed declaring a forfeiture of the contract for two years after execution of the note. These facts all bear on the extent and meaning of the transaction involving the promissory note and, when

1. The affidavit filed by Paul Greaser on behalf of the plaintiffs describes the transaction involving the promissory note as follows:

"7. The second year's (1979) [sic] payment of principal and interest were [sic] not made by defendants. Defendants desired to keep their rights under the contract and therefore negotiated with the sellers to prevent sellers from exercising their rights as a result of defendants' default. As a result of these negotiations, defendants and sellers agreed as follows:

"a. Sellers agreed to postpone the 1979 [sic] payment of principal of $28,500.00, thereby extending the period of the contract for one year.

"b. Buyers-defendants agreed to execute and deliver a promissory note to G.J. Greaser, Edith B. Chase and Jack Patton jointly for the accrued interest for 1979, [sic] said promissory note bearing the date of November 29,

1980, and was in the amount of $23,085.00 (9% interest × 256,550.00 unpaid principal)."

The affidavit filed by Earl Williams for the defendants provides:

"7. The promissory note was given towards the purchase price as the interest due on November 29, 1980 on the November 29, 1978 contract. Defendants did not receive a receipt for payment of interest nor were they given credit for the payment of interest with the escrow agent."

2. Rule 56(e), W.R.C.P., sets out the requirements for affidavits submitted in support of summary judgment motions:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

viewed in a light most favorable to the plaintiffs, suggest a different conclusion from that reached by the district court.

Summary judgment is not available where the parties dispute the facts which explain and give meaning to their agreement. *Weaver v. Blue Cross-Blue Shield of Wyoming*, Wyo., 609 P.2d 984, 989 (1980). Where, as here, the affidavits of the parties set forth conflicting facts and resolution of the issues depends, at least in part, on the credibility of the witnesses, summary judgment is inappropriate. *Osborn v. Manning*, Wyo., 685 P.2d 1121, 1123 (1984). We hold, therefore, that the district court erred in entering summary judgment on the plaintiffs' claim to enforce the promissory note.

## RIGHTS OF THE BUYERS IN DEFAULT UPON FORFEITURE OF THE CONDITIONAL SALES CONTRACT

### Restitution

As a result of the buyers' failure to pay the annual installments as they came due under the Real Estate Sales Contract, the sellers terminated the contract and retained as liquidated damages the $15,000 initial payment plus the street and water line installed by the buyers. The contract specifically gives the sellers the right to retain "all sums paid by the buyers hereunder" in the event of forfeiture. The buyers' obligations under the contract included payments for street improvements.

In the past, we have upheld the right of a seller to terminate an installment land contract and to retain all payments and improvements made by the defaulting buyer. *Lawrence v. Demos*, 70 Wyo. 56, 244 P.2d 793 (1952); *Quinlan v. St. John*, 28 Wyo. 91, 201 P. 149 (1921), *reh. denied* 28 Wyo. 91, 203 P. 1088 (1922). More recently, however, we have said that the buyer in breach of such a contract may, in an appropriate case, be entitled to the equitable

remedy of restitution. *Angus Hunt Ranch, Inc. v. REB, Inc.*, Wyo., 577 P.2d 645, 649 (1978). The Williamses contend that circumstances in this case warrant restitution of the $15,000 initial payment and the value of improvements made to the land.[3]

First, the defendants assert that the Real Estate Sales Contract contains a mistake in the property description which permits them to rescind the agreement and obtain appropriate equitable relief. The Williamses raise this issue for the first time on appeal, contrary to our firmly established rule that questions not asserted in the trial court are not properly before this court. *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452, 462 (1983). We have repeatedly refused to consider an issue raised for the first time here unless it concerns the court's jurisdiction or a fundamental right. *Scott v. Fagan*, Wyo., 684 P.2d 805, 809 (1984); *Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13 (1984). Therefore, we will not address the Williamses' right to rescind the Real Estate Sales Contract following the declaration of forfeiture by the sellers.

The Williamses make a parallel argument that the sellers wrongfully secured the benefits of the land improvements upon termination of the contract, because they misrepresented the boundaries of the land conveyed. Regardless of any right of rescission, the buyers contend that the sellers should not be permitted to misdescribe the property, terminate the contract, and then retain the improvements placed there by the buyers in good faith.

The undisputed facts do not support this contention. While the original Real Estate Sales Contract contains an error in the property description, the parties entered into an agreement, designated Real Estate Sales Contract Correction, which purports to correct the erroneous descrip-

**3.** The Williamses do not appear to claim that the retained performance was not reasonably related to the sellers' actual damages, and that issue is not before us on appeal.

tion. The revised contract precisely describes the property in terms of metes and bounds and provides that all other terms and conditions in the original contract shall remain in force. Both the original contract and the revision specify that the tract of land contains 15 acres, more or less. Since the parties corrected any error in the original property description to their apparent satisfaction, the Williamses cannot assert misrepresentation or mistake as grounds for restitution upon forfeiture of the contract.

The Williamses also take the position that the sellers have no right to retain the initial payment and improvements because the notice of default signed by Paul Greaser was not effective to terminate the Real Estate Sales Contract. The buyers contend that the contract requires the *sellers* to issue the notice of forfeiture and that Paul Greaser, as "a stranger to the contract" has shown no authority to act on behalf of the sellers. Furthermore, the buyers argue, the actions of Paul Greaser terminated only the escrow account and had no effect on the underlying sales contract.

■ The buyers correctly assert that a conditional sales contract remains in force absent appropriate notice to the nonperforming party of intent to declare a forfeiture. *Kost v. First National Bank of Greybull,* Wyo., 684 P.2d 819 (1984). However, the letter of November 3, 1982, sent by Paul Greaser to the buyers fully satisfies the notice requirement and effectively terminated the sales contract. The letter advises the Williamses of their default under the terms and conditions of the Real Estate Sales Contract, demands that they deliver possession of the premises, and indicates the sellers' intent to terminate the escrow account. Nothing more needed to be said to terminate the parties' contractual relationship.

■ The sellers were free to appoint Paul Greaser as their agent to issue the notice terminating the installment contract.

See *North American Uranium, Inc. v. Johnston,* 77 Wyo. 332, 316 P.2d 325 (1957). If, as the Williamses suggest, Greaser exceeded the scope of his authority in issuing the notice of forfeiture, the sellers, as principal, might state a cause of action against Greaser. See *Snearly v. Hockett,* Wyo., 352 P.2d 230 (1960); *Thompson v. Searl,* 76 Wyo. 264, 301 P.2d 804 (1956). The Williamses, however, have no standing to question Greaser's authority as an agent because they can show no harm caused by his alleged abuse of authority. See *Spratt v. Security Bank of Buffalo,* Wyo., 654 P.2d 130, 134 (1982); *Campbell v. Wyoming Development Co.,* 55 Wyo. 347, 100 P.2d 124, 140, *reh. denied* 55 Wyo. 347, 102 P.2d 745 (1940). Moreover, the buyers recognized Greaser's authority to act for the sellers in these matters when they negotiated with him in August, 1982, to cure their default under the conditional sales contract. We hold that the notice of default and demand for release of possession, issued by Paul Greaser on behalf of the sellers in this case, complied with the terms of the Real Estate Sales Contract and effectively terminated that contract.

Finally, the Williamses contend that, if the Real Estate Sales Contract was terminated, the sellers must convey three-quarters of an acre of land in exchange for retention of the $15,000 initial payment. This argument conflicts with the express terms of the contract.

■ Paragraph (5) of the Real Estate Sales Contract provides for the transfer of acreage to the buyers upon each payment of $20,000 toward the principal and specifies:

"* * * The $15,000.00 initial payment cannot be applied toward releasing acreage under this sub-paragraph."

Paragraph (3) obligates the sellers to deliver possession of the property "upon execution of this contract." The buyers did not execute the contract, but defaulted in their

payments and caused the sellers to declare the forfeiture. The forfeiture clause permits the sellers to retain "all sums paid by the BUYERS" under the contract. The plain language of the parties' agreement contemplates that the sellers will retain the initial payment in the event of the buyers' default, with no obligation to transfer additional acreage to the buyers.

*Reimbursement of Interest Over-payment*[4]

The buyers contend that as a result of the erroneous property description in the Real Estate Sales Contract, they overpaid the amount of interest due at the time of the first installment. The Williamses interpret the sales contract as an agreement to purchase 15 acres of land at $20,000 per acre, for a total sale price of $300,000. The contract contained an error in the property description, however, and the parties actually intended to transfer approximately 14½ acres. Applying the rate of $20,000 per acre to 14½ acres, the Williamses reason that they were overcharged $10,777 for the property and that in November, 1979, they paid $969.93 in excess interest.

■ The Williamses' claim to recover this alleged interest overpayment fails for three reasons. First, the Real Estate Sales Contract specifies a "total sale price" of $300,000 for a tract of land "containing 15 acres more or less." Nowhere does the contract describe the sale price as $20,000 per acre, and the fact that the parcel contained approximately 14½ acres has no effect on the balance due from the buyers. Second, the parties corrected the error in the property description and agreed that

"[a]ll other terms and conditions" of the original contract would remain unchanged. Presumably, "[a]ll other terms and conditions" includes the $300,000 sale price. Finally, when the sellers terminated the contract in 1982, the buyers owed approximately $46,170 in interest and will not be heard to complain about an overpayment of $969.93 in 1979.

## SUMMARY JUDGMENT PROCEDURE

The district court denied the plaintiffs' first motion for summary judgment because the supporting affidavit was filed late and could not be considered. The plaintiffs then filed a second motion for summary judgment, supported by their earlier filed affidavit. The Williamses contend that the district court erred in granting this motion with respect to their counterclaims, because Rule 56, W.R.C.P., does not permit the filing of a second summary judgment motion following denial of the first motion.

■ While the rule does not deal specifically with multiple motions by a single litigant, Rule 56(a), W.R.C.P., provides that a party may move for summary judgment *at any time* after a specified period:

"(a) *For claimant.*—A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

---

4. The district court ruled on this counterclaim pursuant to plaintiffs' motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), W.R.C.P. Since both sides presented affidavits and other documents in connection with the motion and since these materials were not excluded by the court, the motion became one for summary judgment:

"* * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief

can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(b), W.R.C.P.

Accordingly, we have applied the standards applicable to summary judgments in resolving this issue on appeal.

We believe that this language is broad enough to permit a party to file a second motion for summary judgment following the denial of his first motion for procedural reasons. This reading of the rule furthers the purpose of the summary-judgment proceeding which is to determine whether any real issue exists necessitating a full trial. *Kimbley v. City of Green River*, supra, 642 P.2d at 446. By permitting a party to file more than one motion for summary judgment in an appropriate case, we may be able to avoid an unneeded trial:

> " * * * A summary judgment proceeding allows for a prompt disposition of actions in the early stages of lawsuits, permitting an end to unfounded claims and avoiding the heavy expense of a full-fledged trial to both the litigants and the judicial machinery of the state, already overburdened." *Bluejacket v. Carney*, Wyo., 550 P.2d 494, 496 (1976).

The Williamses make a related argument that the second motion for summary judgment was filed without accompanying affidavits and that the trial court erred in considering the earlier filed, untimely affidavit in support of the motion. In *De-Herrera v. Memorial Hospital of Carbon County*, supra, 590 P.2d at 1344, we recognized that the rules of civil procedure allow for an enlargement of time within which to file a supporting affidavit, if a proper request or motion is made. See Rule 6(b), W.R.C.P.[5] The second summary-judgment motion in the case at bar amounted, in effect, to a request for an extension of time within which to file the supporting documents. The defendants have shown no prejudice resulting from this procedure or otherwise established that the trial court abused its discretion in considering the original affidavit with the second motion. We hold that the court properly considered the plaintiffs' motion for summary judgment and earlier filed affidavit following denial of their first motion on procedural grounds.

To summarize our disposition of this appeal, we conclude that an issue of fact exists which is determinative of the plaintiffs' rights to enforce the promissory note. Accordingly, we reverse the summary judgment entered in favor of the defendants on the promissory note. The material facts are not in dispute with respect to the defendants' counterclaims based on the forfeited installment contract, and the plaintiffs are entitled to prevail in these actions as a matter of law. Therefore, we affirm the judgments entered in favor of the plaintiffs on the defendants' counterclaims for restitution and reimbursement of an interest overpayment.

Affirmed in part, reversed in part, and remanded for trial.

---

**5.** Rule 6(b), W.R.C.P., provides:

"(b) *Enlargement.*—When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court, or a commissioner thereof, for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *."