2007 WY 104

**Barbara REYNOLDS and Laurrie Reynolds, Appellants (Plaintiffs),**

v.

**John A. MILATZO and Diana R. Milatzo, Appellees (Defendants).**

No. 06–217.

Supreme Court of Wyoming.

June 29, 2007.

510

Representing Appellants: Lisa M. Barrett of Buchhammer & Kehl, P.C., Cheyenne, Wyoming.

Representing Appellees: Steven F. Freudenthal of Freudenthal, Salzburg & Bonds, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, JJ., and GUTHRIE, D.J.

KITE, Justice.

[¶ 1] Barbara and Laurrie Reynolds (Sellers), the sellers under a contract for deed, sought to enforce the default provisions

of the contract against the buyers, John and Diana Milatzo (Buyers). The district court refused to order that the property reverted to Sellers, but granted a money judgment in favor of Sellers because they had paid taxes and insurance on the property for which, under the terms of the contract, Buyers were responsible. We conclude that Sellers waived strict compliance with the terms of the contract and failed to comply with the default notification provisions. Consequently, we affirm the district court's decision.

## ISSUES

[¶ 2] Sellers present the following appellate issues, phrased as statements:

I. The district court erred by determining a waiver of Appellant[s]' ability to enforce their rights pursuant to the default provisions of the Contract for Deed.

II. The notice of default to Appellee[s] was sufficient under the terms of the Contract for Deed and, as such, the Appellees failed to cure the default thus triggering the default provisions.

Buyers articulate the issues somewhat differently:

A. Was the district court's application of the recognized doctrine of waiver erroneous or contrary to the great weight of the evidence[?]

B. Failure to comply with the notification provisions of the escrow instructions was an attempt to deny Milatzos of a substantial contractual protection[.]

## FACTS

[¶ 3] On March 31, 1994, the parties entered into a contract for deed on property located in Cheyenne, Wyoming. The total purchase price was $79,500, payable by a substantial down payment with the balance, together with interest, to be paid over a term of 192 months. The payments were due on the first day of the month and "[a]ny payment received more than 10 days after the due date" was to include "a penalty in a sum which is equal to four percent (4%) of the monthly payment." The contract also required Buyers to pay the taxes and insurance

on the property and provide proof of those payments to Sellers. The default provision gave Sellers the following rights:

In the event Purchaser fails to make any payment required by the terms of this contract, within 15 days of the date the same falls due including installment payments to Seller, payments for taxes, assessments and insurance premiums, or in the event Purchaser is otherwise in default Seller may, at his option:

1. Make such payment and add the amount thereof together with interest at eight percent (8%) to the obligation of Purchaser.

2. Notify Purchaser by registered or certified mail of such failure. The Purchaser shall have 30 days from the date of mailing of such notice to cure such defect and in the event such defect is not cured within the 30 days, this contract shall be forfeit[ed] and terminated, all documents in escrow shall be delivered to Seller ... and Seller shall be fully reinvested with all right, title, and interest [in the property].

* * *

4. The waiver of any breach of any term hereof shall not be a waiver of any subsequent or other breach hereof nor of any term or condition hereof.

[¶ 4] The parties agreed in the contract for deed to have the transaction overseen by an escrow agent. To that end, they signed escrow instructions, which included the following provisions pertaining to default:

1. [S]hould any of the undersigned declare in writing to escrow agent a default or breach of the terms and conditions of the agreements subject to this escrow, specifying the same with particularity, the escrow agent shall give written notice of said default by registered mail to the undersigned claimed to be in default at their last known address. The undersigned claimed to be in default within 30 days after mailing of the notice of default by escrow agent shall give written notice to escrow agent of any objection to the termination of this escrow. Lacking receipt of objection within said time,

escrow agent, without liability of any kind whatsoever, shall terminate the escrow, and return all escrowed agreements, documents and funds to the undersigned requesting the re[s]cis[s]ion.

The contract for deed specifically addressed the possibility of a conflict between the terms of the contract and the escrow instructions, by stating: "[a]ny conflict between this agreement and the escrow instructions shall be controlled by the provisions of the escrow instructions."

[¶ 5] Shortly after execution of the contract for deed, the parties exchanged correspondence, both personally and through their respective attorneys, about the contract. The correspondence pertained to Buyers' obligation to provide proof of insurance and payment of taxes.[1] Sellers also reminded Buyers of their obligation to make timely payments and the penalty for late payments. In August 1995, Sellers' attorney proposed that the parties amend the contract for deed to have Sellers pay all of the taxes and insurance on the property and add approximately $80 per month to Buyers' monthly payment to reimburse Sellers for those expenses. Buyers' attorney responded, indicating Buyers agreed with the proposal. In an August 16, 1995, letter to Buyers' attorney, Sellers' attorney indicated he would contact Sellers to obtain their final approval of the contract amendment. The parties never followed through with the proposal and the contract remained unchanged.

[¶ 6] Over the years there were instances when Buyers did not comply with their contractual obligations. In particular, Buyers did not consistently insure the property, and, even when they did maintain insurance on the property, they did not provide Sellers with proof of insurance coverage. Consequently, in 1996, Sellers began to separately insure their continuing interest in the property. In addition, Sellers paid the property taxes in 2003 when Buyers failed to comply with that obligation. Buyers were also late

making some payments under the contract for deed.

[¶ 7] On January 9, 2004, Sellers sent Buyers a certified letter notifying them they were in default on certain provisions of the contract for deed. Sellers stated that, to cure the default, Buyers needed to provide proof of insurance, reimburse Sellers for late fees, taxes and insurance payments made on their behalf in the amount of $6,424.10, and pay interest in the amount of $3,294.36. The letter stated the cure deadline was February 9, 2004. On January 20, 2004, Sellers personally served Buyers with a second letter, which included the same demands as the January 9 letter, but extended the cure deadline to February 19, 2004. Neither default letter was transmitted through, or copied to, the escrow agent.

[¶ 8] In response to the default notifications, Buyers made arrangements to pay off the contract for deed by securing a loan from another individual. The escrow agent provided a statement of the balance due on the contract for deed, and on February 16, 2004, Buyers tendered full payment in accordance with the escrow agent's pay-off calculations. Following the terms of the escrow, the escrow agent released the warranty deed to Buyers.

[¶ 9] Sellers objected to the transfer of the property to Buyers because they had not paid the additional amounts identified in the default notices. Consequently, Sellers filed a complaint, setting forth claims for breach of contract, breach of the covenant of good faith and fair dealing, and punitive damages. Sellers requested relief in the form of return of the property, payment of damages, and attorney's fees and costs. Buyers answered and counterclaimed, asserting they had fulfilled the terms of the contract for deed.

[¶ 10] The district court held a bench trial. After Sellers rested their case, the district court granted Buyers' motion to dismiss Sellers' claims for late fees and interest because the evidence was insufficient to support those claims.[2] At the conclusion of the

---

1. Buyers did not pay the second half of the 1994 property taxes when due. Sellers paid the taxes, and Buyers reimbursed them for that expenditure.

2. Sellers do not contest the district court's dismissal of those claims.

trial, the district court articulated its ruling verbally:

> Well, judgment will be for the plaintiffs in the sum of [$]5310.66. That will be the extent of the relief granted. Beyond that, the Court finds for the defendants—I think the evidence is clear that there was a waiver, a failure to enforce the rights. If one wants to look at this in terms of requiring strict compliance, then of course, the Reynolds didn't strictly comply, either. They didn't go through the escrow the terms of the agreement required them to do. Notice was not given in writing through the escrow. There's no question that the equity favored the Milatzos here.

> I think it's appropriate to enter judgment for the amount of the insurance payment because the Reynolds had this investment, and it was at risk at any time due to casualty loss. They simply had to cover it in the absence of the proof of insurance that was required, and that was reasonable for them to do that.

> So that will be the judgment.

The written judgment incorporated the critical terms of the district court's oral ruling, but did not include specific findings of fact or conclusions of law. Sellers appealed from the district court's judgment.

## STANDARD OF REVIEW

[¶ 11] The district court heard this case without a jury, but did not issue special findings of fact and conclusions of law pursuant to Wyo. R. Civ. P. 52(a). When the district court does not accompany its decision with express findings of fact, we assume that the general finding by the court carries with it every finding of fact supported by the record. *In the Interest of MFB*, 860 P.2d 1140, 1151 (Wyo.1993); *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 335 (Wyo.1987). This Court will not interfere with the district court's findings unless they are clearly erroneous or so totally against the evidence as to be manifestly wrong. *Skinner v. Skinner*, 601 P.2d 543, 545 (Wyo.1979).

[¶ 12] " 'A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Wells Fargo Bank Wyoming, N.A. v. Hodder*, 2006 WY 128, ¶ 13, 144 P.3d 401, 407 (Wyo.2006), quoting *Fraternal Order of Eagles Sheridan Aerie No. 186, Inc. v. State ex rel. Forwood*, 2006 WY 4, ¶ 24, 126 P.3d 847, 857 (Wyo.2006). In reviewing the district court's findings, we assume the evidence of the prevailing party is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. *Id.* As always, the district court's conclusions of law are subject to our *de novo* standard of review. *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

## DISCUSSION

[¶ 13] Sellers contest the district court's refusal to declare that the contract for deed had terminated because of Buyers' defaults and order the property returned to them. The district court based its decision on several related grounds, including: Sellers had waived strict performance by Buyers of some of the terms of the contract; Sellers did not give Buyers notice of default in accordance with the escrow agreement; and the relative equities supported Buyers.

[¶ 14] Wyoming case law offers several principles to guide us in reviewing the district court's decision. We begin with the general rule that courts interpret contracts to effectuate the parties' intention, as expressed in the language of the agreement. *See, Ahearn v. Hollon*, 2002 WY 125, ¶ 18, 53 P.3d 87, 91 (Wyo.2002). As long as the contract language is clear and unambiguous, our obligation on appeal is to interpret it as a matter of law. *Id.*

[¶ 15] We are also cognizant of the principle that this Court does not favor forfeiture of contractual rights. *Angus Hunt Ranch, Inc. v. REB, Inc.*, 577 P.2d 645, 650 (Wyo.1978). *See also, Brown v. Johnston*, 2004 WY 17, ¶ 32, 85 P.3d 422, 431 (Wyo. 2004). Before a party can declare a forfeiture, he must establish he has a clear right to terminate the contract and he must be free from blame. *Id.* Moreover, " '[p]rovisions for

forfeiture may be waived and the courts are quick to take advantage of circumstances indicating such an intention.'" *Angus Hunt Ranch*, 577 P.2d at 650, quoting 17 C.J.S. *Contracts* § 407, page 86. *See also, Knapp v. Landex Corp.*, 2006 WY 36, ¶ 14, 130 P.3d 924, 928 (Wyo.2006). In order to establish a *prima facie* case of waiver, the buyer must establish that the seller "has condoned or assented to previous defaults and has not given notice of his intention to insist on strict compliance in the future." *Angus Hunt Ranch*, 577 P.2d at 650.

[¶ 16] In appropriate cases, however, we must enforce the default provisions the parties freely agreed to in their contract. We have said:

[A]fter competent parties have solemnly contracted and agreed to certain conditions, courts should exercise restraint in nullifying the terms thereof or rewriting the contract. It is said that this is "a dangerous jurisdiction which should not be extended." It does not extend so far as to authorize a court of equity to disregard and set aside a valid stipulation of the parties upon the performance of which their rights are made to depend in the absence of some equitable basis.

*Ahearn v. Ahearn*, 993 P.2d 942, 948 (Wyo. 1999) (citations omitted).

[¶ 17] The district court held that Sellers waived strict compliance with some of the terms of the contract for deed. The record supports the district court's ruling. Beginning early in the contract, Buyers made some late payments and failed to secure hazard insurance, provide proof of insurance when it was in place, and, on a couple of occasions, pay the property taxes. As described above, in the early years of the contract, the parties discussed amending it to have Sellers pay for the insurance and taxes on the property and have an amount added to Buyers' monthly payment in order to reimburse Sellers for those costs. The last letter in that series was dated August 16, 1995, and was written by Sellers' attorney to Buyers' attorney. In that letter, Sellers' attorney indicated that he generally agreed with the plan to amend the agreement, but his clients needed to make the final decision about whether to accept the proposal. The record does not indicate Sellers took any further action, at that time, to address Buyers' failure to comply with their tax and insurance obligations. Instead, the contract continued under its original terms and Sellers' obtained their own insurance on the property.

[¶ 18] In addition, Buyers made numerous late payments over the years and, apparently, paid the late fees on some occasions, but not on others. The parties communicated about the late payment issue, but there is no indication Sellers made any effort to declare a default under the terms of the contract or the escrow instructions. Thus, the evidence supported the district court's conclusion that Sellers waived strict compliance with the contract for deed and, in order to enforce the contractual terms as written, Sellers were required to give appropriate notice of their intention.

[¶ 19] As quoted above, the contract for deed called for Sellers to provide Buyers with notice of default by certified mail and Buyers would then have thirty days to cure the defect. The escrow instructions added to the notification obligation by requiring the notice of default to be given through the escrow agent. The contract for deed also provided that, in the event there was any conflict between the terms of the contract and the escrow instructions, the escrow instructions controlled. Under the plain language of the parties' agreement, in order to declare a default, Sellers were required to give Buyers notice through the escrow agent.

[¶ 20] It is undisputed that Sellers issued the notices of default directly to Buyers, without going through the escrow agent. Consequently, the default notice did not comply with the clear language of the parties' agreement and was not effective to trigger the default or cure provisions of the contract for deed. Failing appropriate notice of default, Buyers were entitled to rely on the provisions of the contract which allowed them to prepay the contract amount to the escrow agent and receive, in return, full title to the property.

[¶ 21] The district court's findings that Sellers waived strict compliance with some of the contract requirements and that the default notices did not comply with the contractual terms were not clearly erroneous. Consequently, the district court did not err by refusing to declare that the contract had terminated or order the property to be returned to Sellers.

[¶ 22] Affirmed.